THE MENUT & PARKS CO. *v.* VILLAGE OF ST. JOHNSBURY.

May Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1944.

*Witters & Longmoore* for the petitioner.

*Arthur L. Graves* for the petitionees.

STURTEVANT, J.   This is a petition for a writ of mandamus. Among the allegations of the petition, it is stated that the trustees of the village of St. Johnsbury raised the roadbed in front of a building owned by the petitioner and standing upon the line of Portland street in that village, more than three feet, without giving notice to the petitioner and in violation of their duties as fixed by P. L. secs. 4808 to 4812, inc.   This proceeding is brought to obtain a compliance with the provisions of those statutes by the village trustees.   The case is submitted on the petition and answer

and an agreed statement. From these, among others, the following facts appear.

The petitioner is a Vermont corporation and at all times here material has been engaged in the business of selling and delivering various kinds of fuel in the village of St. Johnsbury. Railroad street extends through the village in a north to south direction. Portland Street, which is a public highway, begins at Railroad street and extends from there easterly through the village and on, to and through New Hampshire to Portland, Maine. The petitioner owns a parcel of land in the village which has a frontage on Portland street of about fifty feet. On this lot is a wooden building the first floor of which was formerly occupied by the petitioner as an office in connection with its fuel business. This building has been in its present location and owned by the petitioner at all times here material, and is now rented as a tenement. Its southerly end faces Portland street for about twenty-five feet and is two or three feet northerly from the northerly boundary of that street. The premises are bounded on the west by St. Mary street which leads northerly from Portland street for about one fourth mile and has no other outlet or street connection. There are two Portland street railroad crossings in this vicinity, that of the Canadian Pacific railroad a short distance westerly and that of the Maine Central railroad a few feet easterly from the petitioner's premises. In October, 1940, the selectmen of the town of St. Johnsbury and the trustees of the village entered into an agreement with the State of Vermont, the purpose of which was to bring about the elimination of the two Portland street railroad crossings. Pursuant to this agreement, the state highway department, with the consent, approval and co-operation of the trustees of the village, has erected above and along Portland street a concrete and steel viaduct. This is approximately forty feet wide and consists of a concrete roadway with sidewalks and railings on each side and is supported by concrete piers except for a short distance at each end, where it is supported by a solid concrete abutment. The abutment at the westerly end is about thirty-four feet westerly from the aforementioned Canadian Pacific crossing. From that end the viaduct extends easterly about eight hundred ninety feet, passing over the two Portland street railroad crossings and the Passumpsic River. The viaduct is within the Portland street boundaries and the abutment at the easterly end is about twenty

feet easterly of the point where River street comes into Portland street from the south. The old roadbed where Portland street abuts on the petitioner's lot has not been obstructed except by the erection of the aforementioned piers and except for such partial obstruction traffic may now pass over the old roadbed between the abutments, but this will not be true when the Main Central crossing is closed as the plan contemplates. The roadbed of the viaduct in front of the petitioner's premises is about twenty-five feet above the roadbed of Portland street as it existed for many years prior to this construction and at another point it reaches a maximum of about thirty-five feet above the former level of the street. The abutment at the westerly end closes the Canadian Pacific crossing. As a result traffic can no longer pass from the petitioner's premises or St. Mary street westerly over Portland street to Railroad street. There is no direct access from St. Mary street or the petitioner's premises to the viaduct roadbed except that pedestrians may so pass by way of a long flight of stairs. Until the Main Central crossing is closed, traffic from either of these places may reach the roadbed of the viaduct by travelling easterly over the old roadway, thence over a new road known as the Portland street by-pass, to the easterly end of the viaduct, a distance of about fourteen hundred feet from the petitioner's premises. This route is now used only as a way of ingress and egress to and from the petitioner's premises, premises of the Peck Co. which adjoins petitioner's lot on the east, and St. Mary street. All other Portland street traffic past the premises of the petitioner passes over the viaduct. While that structure has been in use since October, 1943, the project is not yet completed as the Maine Central crossing has not yet been closed. This is to be done as soon as a new way of access to St. Mary street can be provided. In July, 1941, the selectmen of the town of St. Johnsbury brought a petition to the public service commission, setting forth that the State was about to erect the viaduct here in question and other facts material to that project and, among other things, asking for an order closing the two Portland street railroad crossings and also for the extension of St. Mary street so as to connect it with another public street in the village. That petition named the petitioner in the case at bar as one owning lands abutting on Portland street and one who might be interested in the subject matter of the petition. No order has been made on the petition and it is still pending before

the commission. The village charter, in section 14a, referring to the authority of the village trustees, states as follows. ". . . and may have the same power to lay out, alter, maintain and discontinue, any street, lane or walk within the village limits, and appraise and settle the damages therefor, as is given by law to the selectmen of towns, . . ." For purposes of this case only, it is admitted that the erection of the viaduct has caused substantial damage to the petitioner's premises. The village trustees have given the petitioner no notice under the provisions of P. L. 4808 and have refused to give it notice of a time when they will meet and consider the matter as to the petitioner's damages, because they contend that the statute has no application to the facts in the case at bar.

The petitioner makes no claim that in erecting the viaduct any of its land has been "taken" within the meaning of our constitution, or that it would be entitled to relief under the common law. As to this matter it agrees that the law is as stated in *Hoyt* v. *North Troy*, 93 Vt 8, 9, 105 A 33, and *Fairbanks* v. *Rockingham*, 75 Vt 221, 223, 224, 54 A 186. It bases its claim upon the provisions of P. L. 4808 which statute is as follows:

> *"Change of grade; notice.* The selectmen or road commissioner shall not alter a highway by cutting down or raising the roadbed in front of a dwelling house or other building standing upon the line of such highway, more than three feet, without first giving notice to the owner thereof, of a time when they will examine the premises, and hear such owner upon the question of making such alteration and the damages by reason thereof."

That statute is remedial because it was enacted for the purpose of curing a defect existing in the law at the time of its passage. *City of Montpelier* v. *Senter,* 72 Vt 112, 114, 47A 392. That it modifies the common law is not disputed. Being a remedial statute passed for the purpose of changing the common law rule, it must receive a liberal construction. *In. re Dexter,* 93 Vt 304, 312, 107 A 134. It is to be reasonably interpreted with reference to the evil it is intended to remedy. *Bacon et al.* v. *Boston & Maine Ry. Co.,* 83 Vt 421, 430, 76 A 128. A presumption obtains against a construction that would render a statute ineffective and a con-

struction that would lead to absurd consequences is to be avoided if possible. *State Highway Board* v. *Gates,* 110 Vt 67, 72, 1 A2d 825. The intention of the legislature constitutes the law. *State Highway Board* v. *Gates,* 110 Vt at 73, 1 A2d at 827.

The petitioner insists that it was entitled to notice and an award of damages under the provisions of the statute. The petitionees dispute this and contend that the statute has no application to the facts in the case at bar, because the grade of Portland street has not been changed nor the roadbed raised or lowered as a result of the street improvement.

The question whether the construction of a viaduct in a highway, similar to the one we are considering here, constitutes a change of grade in such highway has several times been considered by other courts, both state and federal. In *Willis* v. *City of Winona,* 59 Minn 27, 29, 60 NW 814, 26 LRA 142, 143, the court holds that the erection of a viaduct similar to the one in the case at bar is a change of grade. Speaking of the raising of the street grade in front of the plaintiff's lot in that opinion the court states : "It can make no difference whether this was done by filling up the street solidly, or, as in this case, by supporting the way on stone or iron columns. Neither is it important that the city raised the grade of only a part of the street, leaving the remainder at a lower grade."

A similar question was considered by the United States Supreme Court in *Sauer et al.* v. *City of New York,* 206 US 536, 544, 27 S Ct 686, 688, 51 L Ed 1176. In the opinion in that case the Court states. "The state courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel, and not devoted to the exclusive use of a private transportation corporation, is a legitimate street improvement, equivalent to a change of grade; . . ." In support of that holding the Court quotes from *Willis* v. *City of Winona, supra.* To the same effect are, *People ex rel. Crane* v. *Ormond,* 221 NY· 283, 285, 116 NE 993; *Colclough* v. *Milwaukee,* 92 Wis 182, 65 NW 1039; *Benton et al.* v. *Central R. Co. of N. J.,* 126 NJL 340, 19 A2d 672; *Hill-Behan Lbr. Co.* v. *State Highway Com.,* 347 Mo. 671, 148 SW2d 499; *Pennick & Co.* v. *N. Y. C. R. Co.,* 111 F2d 1006; 18 Am Jur 831, sec. 201; 44 CJ 432, sec. 2655; Lewis, Eminent Domain, para. 100 b.

■ General traffic past the petitioner's premises is now at an elevation about twenty-five feet above the roadway formerly used.

The purpose of erecting the viaduct was to discontinue that travel at the former grade and to provide a surface for it at a higher elevation. This has been done. Therefore, in harmony with the authorities hereinbefore cited we hold that the grade of Portland street opposite the petitioner's premises has been raised more than three feet.

However, the petitionees contend that there has been no alteration of Portland street by cutting down or raising the road-bed. As applied to common roads, the term, "roadbed", means; "The whole material laid in place and ready for travel." Webster's New International Dictionary; 54 CJ p. 848; *Eisberg* v. *Cornell*, 138 NYS 661, 663; *Rouse* v. *St. Paul Fire & Marine Ins. Co.*, 203 Mo 603, 219 SW 688. The purpose of a roadbed is to provide a surface upon which traffic may pass. The roadbed on Portland street in front of the petitioner's premises is not the same now as it was before the erection of the viaduct. As we have seen, the grade of the street has been raised. The steel and concrete supported by the piers placed upon the old roadbed furnish a surface for the passage of traffic at an elevation twenty-five feet above the old road surface. That steel and concrete are a part "of the whole material laid in place and ready for travel." It follows that the raising of the street grade here is the same as raising the roadbed. Neither can be accomplished without the other taking place. What we have stated as to change of grade applies here. Also see *Fairbanks* v. *Rockingham*, 75 Vt 221, 223, 224, 54 A 186.

The petitionees contend that the erection of the overpass was the act of the State and they are in no way responsible for the consequences of such construction. It appears from the record that Portland street is a state aid highway and therefore is eligible to receive under state supervision state aid funds for construction and maintenance. P. L. 4643, 11. The erection of the viaduct was a federal aid project under the provisions of P. L. chapter 201 and most of the funds to pay for that work were furnished by the Federal Government. From January 1, 1939, to January 5, 1944, petitionees Cray and McKee and one James A. Cannon were trustees of the village of .St. Johnsbury. Since January 1, 1944, the petitionees have been the duly elected and qualified trustees of the village. It is further agreed that the provisions of P. L. 4808 hereinbefore set out apply to the petitionees and their predecessors in office. The aforementioned contract entered into by the select-

men of the town of St. Johnsbury and the trustees of the village with the State is made a part of the agreed statement.

That contract is in the form of an offer on the part of the selectmen and trustees setting forth certain undertakings by them to be performed for the consideration that the State will erect the overpass here in question. Among those undertakings the selectmen and trustees agree:

A. To furnish such rights of way with improvements thereon as the state highway board shall consider necessary in connection with the project, this to be done without cost to the State. Also to pay any incidental damages that may accrue to abutting or adjacent property due to such improvements or relocations.

B. To protect the State and state highway board from all damages in connection with the construction of said project, for which either may be legally liable.

C. To provide for the removal or relocation of any utilities which interfere with the construction, including telephone conduits, telephone wire, power lines, gas mains, sewers, water mains and any other local service connections.

D. To furnish a bond in the sum of $25,000 to protect the State, state highway board, its employees or agents, due to any conditions which might arise caused by the change in grade or any damage accruing from the construction.

E. To provide facilities on St. Mary street and other points that may be necessary such that both the Portland street railroad crossings may be closed to public travel.

This agreement was signed by the selectmen and trustees October 4, 1940, and it shows that it was examined and approved by the attorney general October 8, 1940, and below his signature appears the following. "Examined and accepted, State Highway Board, By: H. H. Sargent, Commissioner of Highways."

P. L. 4735 authorizes the state highway board to designate the highways on which federal aid funds shall be expended and to make contracts for such work on the designated highways, all subject to federal law. P. L. 4736 authorizes municipalities to cooperate with the highway board in any way necessary to carry out the provisions of P. L. chapter 201 and authorizes them to render financial or other assistance for that purpose. Thus it appears that the selectmen and trustees were well within the scope of their authority in making the aforementioned offer. The acceptance of the

offer by the State has brought about a public improvement beneficial to the village, town and State.

It is agreed that the trustees, in compliance with the terms of the aforementioned agreement, have, at the expense of the village, acquired divers parcels of land abutting on Portland street at either end of the viaduct and have paid damages to the owners of divers other parcels of abutting property where there were alterations in the street. No damages have been paid on account of premises abutting on Portland street between the viaduct abutments except in two instances where lands were actually taken in connection with the project.

From the foregoing it appears that while the trustees did not personally erect the viaduct, yet, on behalf of the village, they were actors in carrying out the plan and have executed no small part of the project. Through these activities they have brought about this public improvement. However, they must accept the obligations that come with the benefits received. It appears that the position of the village trustees is not different from what it would have been if they had contracted with any general construction company to do this work. See *Stalbird et ux.* v. *Town of Washington,* 106 Vt 213, 172 A 623. Therefore we hold that the raising of the roadbed in front of the petitioner's premises was the act of the trustees of the village of St. Johnsbury within the meaning of P. L. 4808. This holding also disposes of the claim made by the petitionees that the town rather than the village is responsible for the erection of the viaduct because that structure is a bridge and therefore under the provisions of P. L. 4737 it is under the control of the town and not the village. The trustees having raised the roadbed in front of the petitioner's premises within the meaning of P. L. 4808, it is not material whether they did this by erecting a bridge or some other structure. Therefore whether or not this structure is a bridge within the meaning of P. L. 4737 we do not decide.

It is contended that whatever claim for damages the petitioner has, if any, should be disposed of in the proceeding hereinbefore mentioned as now pending before the public service commission, as that body has sole jurisdiction of the matter. That claim is based upon the provisions of P. L. 6345 which deals with the elimination of railroad grade crossings and so far as here material provides that: "The commission shall apportion the expense

of such alterations, changes or removals, including the damages to any person whose land is taken, and the special damages which the owner of land adjoining the public highway shall sustain by reason of any such change in the grade of such highway," as therein provided. This statute was considered by this Court in *Stimets* v. *Town of Highgate et al,* 81 Vt 231, 234, 235, 69 A 878. At the time of the decision in that case the board of Railroad commissioners had jurisdiction of railroad grade crossing elimination. Referring to this statute which was enacted as a part of section 1 of No. 125, Acts of 1906, this Court stated: (81 Vt 235), "It was strictly within the commissioners' authority to determine what changes and removals should be made and to apportion the expense thereof, including land damages, but section 1 gives them no authority to take necessary land nor to appraise the damages for land taken." It follows that this statute gives the commission no authority to appraise the special damages which the owner of land adjoining a highway may sustain by reason of a change in grade of such highway. The reasoning in the Stimets case applies here. The only method for determining the amount of damages in such case and making an award therefor specifically provided by our law is as set forth in P. L. 4808 to 4812, inc.

The petitionees call attention to the fact that the building in question stands on petitioner's lot two or three feet northerly of the north boundary line of Portland street and contend that for that reason P. L. 4808 has no application here. Such construction tends to render the statute ineffective and to lead to an absurd result and, as we have seen, is to be avoided if possible. It is a matter of common knowledge that, except in business sections of our villages and cities, buildings are not usually erected on boundary lines of streets or highways. The word "line" has many meanings depending upon the manner in which it is used and the subject to which it is applied. One of these several meanings is "route". Webster's New International Dictionary. So interpreted the statute is effective to accomplish the purpose for which it was enacted. Therefore we so construe it and hold that the petitioner's building here in question is "upon the line" of Portland street, within the meaning of P. L. 4808.

As to the petitionee's contention that the petitioner's damages, if any, can not be determined until the commission has acted upon the petition hereinbefore mentioned as pending before it, it is suffi-

cient to note that the facts hereinbefore stated furnish some basis for a determination of such damage as provided by law, viz; under P. L. 4808 to 4812, inc. From them it also appears that the petitioner is entitled to its day in court.

■ From the foregoing it appears that the petitionees, public officers of the village of St. Johnsbury, refuse to perform the duties enjoined upon them, or to act at all in contemplation of the law as stated in P. L. 4808 to 4810, inc. Such refusal leaves the petitioner without a remedy. Under such circumstances resort may be had to mandamus. *Sanborn* v. *Weir et al,* 95 Vt 1, 6, 112 A 228; *Proctor* v. *Hufnail,* 111 Vt 365, 370, 16 A2d 518. The fact that the petitionees entertained an erroneous opinion as to the application of those statutes to the facts in the case at bar does not alter the situation. *United States* v. *Interstate Commerce Commission,* 246 US 638, 642, 38 S Ct 408, 62 L Ed 914. At the time this case was argued, counsel for the petitioner stated that it does not question that public good required the making of the street alteration here in question. That is, any question as to the necessity for making the alteration is waived.

*Judgment that the prayer of the petition asking for a determination and award of damages is granted with costs to the petitioner. Let a mandate issue, directing the trustees of the village of St. Johnsbury to forthwith give notice to the petitioner of a time when they will examine the petitioner's premises with buildings thereon, located at the northeasterly corner of Portland and St. Mary streets in the village of St. Johnsbury, and hear it upon the question of damages, if any, resulting from the raising of the roadbed of Portland street in front of petitioner's premises, more than three feet, the time of such examination and hearing to be not more than ten days after the giving of such notice. If of the opinion that the petitioner has suffered or will sustain damage by reason of such alteration, the trustees shall determine and award the amount thereof to the petitioner, taking into account by way of set-off thereto, such special benefit, if any, as has accrued or shall accrue to the petitioner by reason of such alteration. The trustees shall make their order and award for damages or refusal to award damages to the petitioner in writing, and shall cause the same to be recorded in the office of the clerk of the village of St. Johnsbury, within ten days from the time of making the same, all in accordance with the provisions of P. L. 4808, 4809 and 4810.*