Robert and Angeles O'GRADY, Appellants,

v.

CITY OF MONTPELIER, Montpelier City Department of Public Works, Stephen A. Gray, Director of Public Works, Richard W. Curtis, Mayor, City of Montpelier, Charles B. Nichols, Jr., Norman J. Coates, Gordon R. Wilkinson, Carroll W. Ayer, Jr., Donald C. Rowan, H. John Lackey, Jr., Individually and in their capacities as aldermen for the City of Montpelier during the year 1972, Roland J. Dubay, City Manager for the City of Montpelier, and Munson Earth Moving Corporation, Appellees.

No. 223, Docket 77–7302.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1977.

Decided March 27, 1978.

---

John A. Burgess, Burgess & Normand, Ltd., Montpelier, Vt. (William J. Ryan, Ryan & Ryan, Montpelier, Vt., of counsel), for appellants.

W. Edson McKee, McKee, Giuliani & Cleveland, Montpelier, Vt., for appellees City of Montpelier, Montpelier City Department of Public Works, Gray, Curtis, Nichols, Coates, Wilkinson, Ayer, Rowan, Lackey, and Dubay.

Richard H. Gregory, III, Dinse, Allen & Erdmann, Burlington, Vt., for appellee Munson.

Before FEINBERG, OAKES and GURFEIN, Circuit Judges.

OAKES, Circuit Judge:

Appellants, garage owners in Montpelier, Vermont, appeal the dismissal of their two-

pronged complaint seeking damages in excess of $10,000 against the City of Montpelier,[1] certain City officials,[2] and a local contractor, Munson Earth Moving Corporation (Munson). The complaint first alleges that appellants were denied due process of law when the City raised the level of the grade of a street abutting appellants' property by more than three feet,[3] pursuant to a Neighborhood Improvement Project, without affording them notice and an opportunity to be heard, contrary to the City Charter.[4] It secondly asserts a deprivation "of the use and enjoyment" of appellants' premises from the alteration of the grade which caused water to drain into the garages rendering two units unavailable for rental purposes and causing structural damage to all units. Complaint for Appellants at 5. Suit is brought against the City directly under

the Fourteenth Amendment on the jurisdictional base of 28 U.S.C. § 1331(a)[5] and against the other defendants under the Civil Rights Act, 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3).

The United States District Court for the District of Vermont, Albert W. Coffrin, *Judge,* sua sponte dismissed the complaint for lack of jurisdiction under both § 1343(3) and § 1331(a) and for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).[6] Judge Coffrin reasoned that the State's action did not amount to a taking of property under the Fourteenth Amendment; thus the facts presented by appellants did not reveal a deprivation of any constitutionally protected right.[7] We reverse.

1. The City acted through its Department of Public Works, also named as a defendant.

2. The individual defendants include the Mayor, the City Manager, the Director of Public Works and the City's Aldermen.

3. Appellees dispute this allegation, contending that the alteration was less than three feet.

4. The City Charter in effect in 1972 when the construction was undertaken provided in pertinent part:

Section 1. The city council upon notice to persons affected may lay out, of any convenient width, alter, maintain, establish and change the grade of and discontinue any street, road, highway, lane, alley or sidewalk in said city and appraise and settle the damage therefor; and may make, maintain and repair such common sewers and sewage disposal plants within or without the City of Montpelier as the public health or the convenience of individuals shall require. The city council may take land and other property necessary to accomplish such purposes on making compensation for the same, causing their proceedings to be recorded in the city clerk's office in said city.

Sec. 2. In taking land and other property for the purposes stated in the preceding section, the city council shall proceed in the same manner as is provided by law for selectmen in taking land for highways. Any person aggrieved by the proceedings shall have like opportunity of applying to the county court to obtain redress as is or may be allowed by law to those aggrieved by the proceedings of selectmen in taking land for highways. Such appeal, if taken from the appraisal of damages only, shall not prevent

the city from proceeding with its work as though no appeal had been taken.
An Act to Amend the Charter of the City of Montpelier, 1955 Vt.Acts, No. 329, tit. XII, §§ 1 & 2 (1955).

5. Colorable jurisdiction exists under *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 276–81, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and *Gentile v. Wallen,* 562 F.2d 193, 195–96 (2d Cir. 1977). Jurisdiction over Munson was also invoked under 28 U.S.C. § 1331(a).

6. The district court relied on the complaints, the affidavits of the parties and other filed documents, thereby treating the matter as a motion for summary judgment, as specified in Fed.R.Civ.P. 12(b).

7. Judge Coffrin stated:
Accepting [the] facts as true, and regardless of whether plaintiffs received notice of the proposed highway improvements, we do not think that the facts present a case of the deprivation of a constitutionally protected right . . . .
. . . The question is whether the interference with plaintiffs' property rights caused by defendants' action is of a sufficient magnitude to become a constitutionally cognizable *deprivation* of property.
. . . [T]he Court is able to apprehend nothing more than a possible cause of action for trespass or for some other tortious interference with property rights . . . . . [T]he complaint . . . has not alleged a deprivation of property in the constitutional sense. *O'Grady v. City of Montpelier,* No. 76–20 at 3–4 (D.Vt., dated May 26, 1977) (citations omitted) (emphasis in original).

Appellants present two possible constitutional grounds for invoking federal jurisdiction: a "taking of their property without compensation,[8] and a denial of due process of law by the City's failure to notify and afford them an opportunity to be heard before the City Council on the awarding of damages, prior to the City's initiating construction. If the facts do not reveal either of these constitutional deprivations, plaintiffs have failed to state a federal claim upon which relief can be granted, and dismissal is proper.[9]

Two actions of the State arguably constitute a taking. The first is the construction itself. The second is the resulting water drainage and damage to appellants' premises. As to the first, it is fairly well established that changing the level of a grade of a road does not constitute a taking. *Menut & Parks Co. v. Village of St. Johnsbury*, 114 Vt. 41, 45, 39 A.2d 342, 344 (1944); *Hoyt v. Village of North Troy*, 93 Vt. 8, 9, 105 A. 33, 34 (1918); 2A J. Sackman, *P. Nichols' The Law of Eminent Domain* § 6.4441[1] (rev. 3d ed. 1976). *See also United States v. Willow River Power Co.*, 324 U.S. 499, 510–11, 65 S.Ct. 761, 89 L.Ed. 1101 (1945) ("It has been held in nearly every state in the Union that 'there can be no recovery for damages to abutting property resulting from a mere change of grade in the street in front of it, there being no physical injury to the property itself, and the change being authorized by law.'") (footnote omitted); 26 Am.Jur.2d *Eminent Domain* §§ 228–29 (1966). In other words, an abutting landowner does not have a property interest in the existing grade of a street.[10] While a state statute or constitution may create the right to compensation when the grade of a road is altered,[11] the protection thereby afforded exceeds that

---

**8.** The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S.Const. amend. V. This prohibition is made applicable to the states through the Fourteenth Amendment. *Chicago, B. & Q. R.R. v. City of Chicago*, 166 U.S. 226, 235–41, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

**9.** On the facts of this case, in order to establish a claim cognizable under Section 1983 and its jurisdictional counterpart, the complaint must allege facts which constitute a denial of a right secured by the Constitution. *Paul v. Davis*, 424 U.S. 693, 696–97, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Of course, the same would be true in respect to any direct cause of action under the Fourteenth Amendment.

**10.** Although the Constitution protects property rights, they are created and defined by state law. *Paul v. Davis, supra*, 424 U.S. at 710, 96 S.Ct. 1155; *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Gotkin v. Miller*, 514 F.2d 125, 128 & n.5 (2d Cir. 1975).

**11.** Vermont has such a provision in its Highway Act. Vt.Stat.Ann. tit. 19, § 1052 (1968), provides:

The selectmen or road commissioner shall not alter a highway, by cutting down or raising the roadbed in front of a dwelling house or other building standing upon the line of such highway more than three feet without

first giving notice to the owner thereof, of a time when they will examine the premises, and hear such owner upon the question of making such alteration and the damages by reason thereof.

A town resident is entitled to petition a court for the appointment of commissioners to assess damages, *id.* at § 1054, and the court may reject the commissioners' findings. *Id.* at §§ 382–89 (1968 & Supp.1977). A "town" under the Vermont Highway law includes a city, *id.* at § 1 (Supp.1977). "Selectmen" include city councils. *Id.*

Section 1052 has been liberally construed as a remedial statute providing rights nonexistent at common law and remedying injuries otherwise uncompensable under the State Constitution. *See Menut & Parks Co. v. Village of St. Johnsbury*, 114 Vt. 41, 45, 39 A.2d 342, 344 (1944). If the statute is not followed, landowners have a remedy by way of writ of mandamus (or injunction) directed against the appropriate officials to obtain an award of damages. *Id.* at 51, 39 A.2d at 347–48.

That portion of the Montpelier City Charter authorizing the right to damage recoveries for changes of grade, *see* note 4 *supra*, is doubtless to be construed in *pari materia* with Section 1052, thereby incorporating the State Highway Law definition of what constitutes a compensable change of grade and the well-established body of Vermont law interpreting that statute. This is true because the Charter itself refers to the basic eminent domain provisions of the Highway Law. *See* note 4 *supra*.

which is available under the Fifth and Fourteenth Amendments.[12]

▮ Whether the damage to appellants' garages allegedly caused by the water drainage was sufficient to constitute a taking is, however, unclear on the basis of the briefs and affidavits submitted below. While we must read these papers in the light most favorable to appellants, *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam); 2A *Moore's Federal Practice* ¶ 12.08, at 2266–67 (2d ed. 1975); *see Cruz v. Beto,* 405 U.S. 319, 321–22, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam), in this case they offer insufficient facts from which to draw any firm conclusions. They do not reveal where the water comes from, whether the drainage is without cessation, whether the two units are continuously unusable, the extent of the structural damage, if any, or the amount of rental income lost. Appellants may have a right to compensation under Vermont law,[13] but this does not necessarily mean that they have been deprived of their property in the sense contemplated by the Fifth and Fourteenth Amendments. Obviously not every interference with a property right gives rise to a constitutional cause of action, as the land use regulation cases amply demonstrate. *E. g., Goldblatt v. Town of Hempstead,* 369 U.S. 590, 592–96, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387–97, 47 S.Ct. 114, 71 L.Ed. 303 (1926). *See generally* 2 N. Williams, *American Planning Law* 271–78, 646–47 (1974); 3 *id.* at 91–96 (1975); 5 *id.* at 341–43; F. Bosselman, D. Callies & J. Banta, *The Taking Issue* 139–235 (1973); Van Alstyne, *Taking or Damaging by Police Power: The Search for Inverse Condemnation Criteria,* 44 S.Cal.L.Rev. 1 (1970); Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,* 80 Harv.L.Rev. 1165, 1165–1201 (1967); Sax, *Takings and the Police*

*Power,* 74 Yale L.J. 36, 36–67 (1964); Comment, *Regulation of Land Use: From Magna Carta to A Just Formulation,* 23 U.C. L.A. L.Rev. 904, 904–24 (1976). *Cf. Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) ("There is, of course, a *de minimis* level of imposition [on liberty interests protected by the due process clause] with which the Constitution is not concerned.") *Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (violation of state tort law does not necessarily engender a deprivation of any right protected by the Constitution); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (rights actionable under 42 U.S.C. § 1983 are not coterminous with state tort actions), *cert. denied sub nom. Employee-Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Since we have an insufficient record here on which to act, in the interests of prudence we decline to determine the constitutional question sought to be presented. *See* Mr. Justice Brandeis' concurring opinion in *Ashwander v. TVA,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

▮ We have previously suggested, notes 11–13 & accompanying text *supra,* that Vermont affords plaintiffs a remedy for whatever damage has occurred, although this might be dependent upon the kind of water involved, the reason that it has drained onto plaintiffs' land and the extent, if any, of the damage caused. It has been suggested in a somewhat analogous context by then Circuit Judge Stevens that if such a remedy does exist and has not been resorted to, no constitutional deprivation can be claimed. *See Bonner v. Coughlin,* 517 F.2d 1311, 1319–20 (7th Cir. 1975). Although a subsequently convened en banc court in that case rejected this approach in the context of the prisoner's suit before it, 545 F.2d 565 (7th Cir. 1976) (en banc), this theory would seem to apply with greater force to the more traditional type of "taking" of

---

12. *E. g., Menut & Parks Co. v. Village of St. Johnsbury, supra* (holding that while the predecessor statute to Section 1052 entitles a landowner to notice and an opportunity to present his claim for compensation when his property is damaged by a change of grade, there is no taking within the meaning of the Vermont Constitution).

13. *See* note 12 *supra; Sargent v. Town of Cornwall,* 130 Vt. 323, 292 A.2d 818 (1972); *Capital Candy Co. v. City of Montpelier,* 127 Vt. 357, 249 A.2d 644 (1968).

property by the State that is alleged here. The relevant constitutional command, after all, is that a state must "pay *just compensation* for property taken for public use." *Malloy v. Hogan*, 378 U.S. 1, 4, 84 S.Ct. 1489, 1491, 12 L.Ed.2d 653 (1964) (emphasis added). Without ruling upon these interesting issues, we suggest that on remand the district judge determine, after ascertaining the precise nature of plaintiffs' injuries, whether plaintiffs have a clear remedy under Vermont law.

■ Because of the sparsity of the factual record thus far produced, the district court erred in dismissing the action at this stage. We reverse the dismissal and remand to the district court.[14] In so holding, we do not intend to preclude Judge Coffrin from proceeding, with additional affidavits, by way of summary judgment pursuant to Federal Rules of Civil Procedure 12(b) and 56.

Reversed and remanded.

**14.** Accordingly we need not reach the intriguing question whether there is a remedy for damages against the City directly under the Fourteenth Amendment for a deprivation of property. *See, e. g., Brault v. Town of Milton*, 527 F.2d 730 (2d Cir.) (panel opinion), *rev'd on other grounds*, 527 F.2d 736 (2d Cir. 1975) (en banc); Note, *Damage Remedies Against Municipalities for Constitutional Violations*, 89 Harv.L.Rev. 922 (1976). Nor need we address the contention that appellants have failed to state a constitutional claim against Munson because its conduct was not "state action" or "under color of state law." Brief for Munson at 14. Likewise, our disposition of this case makes it unnecessary for us to consider at this time the effect of Munson's assertion that it acted in good faith.