## Michael Stockwell v. District Court of Vermont, Unit No. 6, Windham Circuit, and James E. Malloy, Commissioner of Motor Vehicles

[460 A.2d 466]

No. 82-177

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 5, 1983

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Plaintiff-Appellant.

*William E. Kraham*, Windham County Deputy State's Attorney, Brattleboro, for Defendant-Appellee.

**Peck, J.** This is an appeal by plaintiff from a judgment order of the Windham Superior Court dismissing his petition under V.R.C.P. 75 and 81 to review the suspension of his motor vehicle driver's license. The suspension was based on his alleged refusal to submit to a chemical (breath) test during the course of processing by the state police on suspicion of driving under the influence of intoxicating liquor (DUI). 23 V.S.A. § 1205(a). Plaintiff filed a timely appeal from the order, and his suspension was stayed pending our disposition of the cause. We affirm.

The appeal raises two issues for our consideration. The first requires us to determine whether a person suspected of DUI is entitled to a full thirty minutes, from the time an attorney is contacted by him or on his behalf, before he may be deemed to have refused to take a breath test when he has made no

express statement of refusal. 23 V.S.A. § 1202(b).* Secondly, assuming the answer to the first issue is in the negative, whether, prior to the expiration of thirty minutes from the initial contact with the attorney, the police here were justified in concluding plaintiff had refused to take a breath test although he never expressly declined to do so.

Both courts below, the district court following the reasonableness hearing, and the superior court after hearing plaintiff's petition for review, answered the first question in the negative, and the second in the affirmative. We concur with their conclusions.

Subsequent to being charged with driving under the influence of intoxicants, plaintiff entered a plea of guilty to the charge; he was convicted on his plea, and his operator's license was suspended for ninety days. No appeal was taken from any part of the court's action in the criminal aspect of the underlying DUI case. However, prior to the plea, the district court conducted a "reasonableness" hearing on plaintiff's alleged refusal to submit to testing. 23 V.S.A. § 1205. We are concerned now only with the result of that hearing, and of the superior court's dismissal of his petition for review.

There is no substantial dispute as to the facts which bear on the matter before us. It would, therefore, serve no practical purpose to set forth here an extended calendar of all the incidents which occurred during the early hours of March 7, 1981, as they relate either to plaintiff or the state police officers involved.

It is sufficient to say that from the time the vehicle plaintiff was operating stopped in a parking lot, and he was first confronted by the state police, until processing at the police barracks was completed, his conduct and the few statements he did make were uncooperative in the extreme. He was offensive, insulting, and abusive, at best, and at times he was physically combative.

Plaintiff was advised of his right to contact an attorney before deciding whether to submit to testing. His strange reac-

---

* References are to 23 V.S.A. § 1202(b) as it existed on the date of the motor vehicle offense charged. Section 1202 was amended by No. 103, § 3, Acts of 1981. The provisions formerly in § 1202(b) are now in § 1202(c).

tion to this request was that he wanted to call his grand-mother because "she's going to be a public defender." He was permitted to do so; thereafter, the police themselves contacted a public defender on his behalf. The plaintiff spoke with the attorney who recommended to him that, under the circumstances, he should decline to take the breath test, but the decision nevertheless was his to make. The attorney informed the police of his recommendation.

Notwithstanding the attorney's recommendation, plaintiff would not give any clear verbal expression of either consent or refusal, responding to questions as to his intent with silence, meaningless insults, and incoherencies. Nineteen minutes after the public defender had been contacted, the officers concluded his actions indicated a refusal and terminated the processing. He now faces an additional year's suspension of his operator's license based on his alleged refusal. 23 V.S.A. § 1205(a).

Finally, a line on the standard printed form, used by police when confronting DUI suspects, reads: "If you want a lawyer, you must decide whether to give the sample within 30 minutes of the first attempt to contact one." However, this language does not necessarily mean that a suspect may not decide at any time prior to the expiration of thirty minutes. Moreover, there is nothing in the record of either hearing in the courts below to indicate that plaintiff was misled by anyone into believing he had thirty minutes from the time the attorney was contacted to decide whether he would submit to a breath test if he chose to indicate a refusal earlier. His present concern is after the fact.

We turn now to the two specific issues raised.

## I.

At the time this case arose, 23 V.S.A. § 1202(b), to the extent relevant here, read as follows:

> A person who is requested by a law enforcement officer to submit to a chemical test under this section shall have the right to consult an attorney prior to deciding whether or not to submit to the chemical test. The person must decide within a reasonable time, but no later than thirty

minutes from the time of the initial attempt to contact the attorney, whether or not to submit to the chemical test.

It is the second sentence of this portion of the statute which gives rise to the first issue. Plaintiff contends that thirty minutes is a minimum period to which a person is entitled before it can be said he has had a "reasonable time" for a testing decision. Therefore, in this case, since the police reached a refusal conclusion after only nineteen minutes had elapsed, he argues his statutory rights were violated.

On the other hand, the State takes the position that thirty minutes is the maximum period which may be considered as reasonable before a refusal may be inferred from a failure to state a decision. The State argues that there is no necessary minimum "reasonable time," but that what is reasonable must be determined on the facts and circumstances surrounding each individual case.

We agree with the State. The construction urged upon us by the plaintiff is contrary to the plain and unambiguous meaning of the statutory language. We have held in numerous cases that when the meaning of a statute is plain and unambiguous on its face, it must generally be enforced according to its express terms and there is no need for construction. *Riddel* v. *Department of Employment Security,* 140 Vt. 82, 86, 436 A.2d 1086, 1088 (1981). Moreover, there is a presumption that the plain and ordinary meaning of statutory language was intended by the legislature. *State* v. *Baldwin,* 140 Vt. 501, 509–10, 438 A.2d 1135, 1139 (1981).

The statutory language here provides an almost classic example for application of the plain meaning rule. Plaintiff had a *reasonable time* to decide whether to submit to testing. It is true that the time does not terminate conclusively against a suspect's interests as a matter of law until the thirty minutes have elapsed following the initial attempt to contact the attorney unless he refuses before the period has run. However, this is a remote cousin indeed from the proposition urged by plaintiff that a reasonable time can never terminate prior to the running of the period. That is simply not what the statute says. The statutory reasonable time is tolled either by the expiration of the thirty minutes or by a reason-

ably clear refusal to submit to the test, whichever occurs first in time. Accordingly, we hold that the statutory thirty minutes is the maximum reasonable time, not the minimum.

## II.

Our response to the first issue being in the negative, we turn to the second: whether the police were justified in concluding that plaintiff had refused to take a breath test prior to the expiration of the thirty minute period referred to above.

■ At the threshold of our inquiry we hold it is not necessary as a matter of law that a refusal to submit to testing by a DUI suspect can be evidenced only by an express, affirmative statement of refusal. In the absence of such a statement, a refusal may be implied from the totality of the surrounding facts and circumstances.

■■ Although the question is one of first impression here, it is no stranger to jurisprudence; courts in other jurisdictions have examined it. See, e.g., *Bauer* v. *Peterson*, 212 Neb. 174, 177, 322 N.W.2d 389, 392 (1982); *Rice* v. *Peters*, 48 N.C. App. 697, 701, 269 S.E.2d 740, 741–42 (1980); *Walker* v. *Goldberg*, 588 S.W.2d 83, 85 (Mo. Ct. App. 1979); *Application* of *Kunneman*, 501 P.2d 910, 911 (Okla. Ct. App. 1972). The general rule disclosed by our examination of these and other authorities appears to be in accord with our holding above.

A refusal to submit to a test for purposes of the implied consent law occurs when the licensee, upon being asked to take the test, conducts himself in a way which would justify a reasonable person in the officer's position in believing that the licensee understood that he had been asked to take a test and that he had manifested an unwillingness to take it.

*Bauer* v. *Peterson, supra,* at 177, 322 N.W.2d at 392. One may refuse the test by his deeds as well as his words. *Rice* v. *Peters, supra,* at 701, 269 S.E.2d at 741–42.

In view of the rule which we adopt today, it remains only to consider whether, given all the facts and circumstances here, which necessarily include the plaintiff's conduct, the

police were justified in concluding when they did that he had refused to take the test.

Plaintiff's attitude was uncooperative from the outset and never changed. While still in the police cruiser, he persisted in rolling down the window and shouting at his companions and other police officers. When asked to roll the window back up he told the officer to roll it up himself because it was his car. The officer did so, and plaintiff proceeded to roll it down again and continue shouting. It was necessary to remove him physically from the state cruiser in order to place him in handcuffs, and to put him physically back into the cruiser after that had been accomplished. At the police barracks plaintiff went through a performance of bouncing off corridor walls on the way to the processing room, shouting that the officers were beating him. There is no evidence whatever to support this contention, nor was any claim of police brutality or abuse ever raised thereafter during the subsequent administrative or judicial proceedings.

Plaintiff was consistently belligerent and uncooperative throughout. He showed not the slightest indication that he was giving any serious consideration to the request made of him several times; he pushed the officers well beyond the limits of any further necessary patience. He responded to requests and questions generally with silence, or with such expressions as: "Huh, I don't think I can hear you"; "Why don't you two turkeys blow"; "Plan (or "Plant") it"; and the like.

On the record before us we hold that the police were justified in concluding when they did that plaintiff had refused to submit to testing.

*Affirmed.*