■ In the Matter of MARY V. BEAVER, Petitioner, v APPEALS BOARD OF ADMINISTRATIVE ADJUDICATION BUREAU, STATE DEPARTMENT OF MOTOR VEHICLES, et al., Respondents.—Mahoney, P. J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Warren County) to review a determination of respondent Commissioner of Motor Vehicles which revoked petitioner's driver's license for refusal to take a chemical intoxication test.

Petitioner is a 75-year-old female physician who actively practices medicine and relies upon her automobile to conduct her practice. While driving in the Town of Queensbury, Warren County, on November 28, 1984, she was stopped by deputies of the Warren County Sheriff's Department. Based upon visual observations of petitioner, an Alco-Sensor test was administered which indicated that petitioner was intoxicated. Petitioner was arrested for driving while intoxicated, was read the statutory chemical test refusal warnings and was asked to submit to a breathalyzer test. When petitioner stated that she wished to call her attorney, she was transported to the Sheriff's office where she telephonically consulted with her lawyer. He advised her to take the test.

Petitioner attempted the test three times. On each occasion she did not produce a sufficient sample of air to complete the test. Petitioner told the deputies that she was blowing as hard as she could. After the third attempt, the deputies treated her inability to complete the test as a refusal. Within 30 minutes of the arrest, petitioner's attorney arrived at the Sheriff's office. After speaking to his client, the attorney requested that the deputies retest petitioner since the statutory two-hour limitation had not yet run. They refused. The deputies also refused the attorney's request to substitute a blood test for the breathalyzer. Petitioner was then taken to a Town Justice,

who asked the deputies if she could take the test again since the statutory time period had not elapsed. The deputies refused. At about 11:30 P.M., petitioner was taken to a local hospital for a blood test. The blood test indicated that petitioner was not intoxicated. The deputies refused to accompany petitioner to the hospital and declined a telephone request by the doctor on duty to attend, supervise the blood test, receive the blood test sample and have it tested by the State Police laboratory.

A hearing was held on December 13, 1984. Dr. Layman St. John, petitioner's physician, testified that she had suffered for a long time from a number of ailments affecting her breathing, including an advanced state of emphysema. She also had suffered from asthma since she was a child. After the arrest date, St. John performed several breathing tests which showed that petitioner's breathing was impaired at the time she took the breathalyzer test. The medically administered tests showed that petitioner had a restrictive lung disease with an advanced degree of emphysema. St. John testified that one of the characteristics of emphysema is that a person cannot move a volume of air. Petitioner could only move 12% of a normal volume of air for a person her age and, further, due to her emotional state attendant upon her arrest, only about 9% of a normal volume. The deputies testified that petitioner did not make an adequate effort to blow into the breathalyzer and construed that perceived lack of effort as a refusal. The Administrative Law Judge credited the testimony of the police officers and revoked petitioner's driving license. Respondent Administrative Appeals Board affirmed and respondent Commissioner of Motor Vehicles approved. This CPLR article 78 proceeding ensued and was transferred to this court.

A finding of a refusal cannot be upheld if consent and cooperation were given and an opportunity given for a proper test which failed for some reason not attributable to petitioner (*Matter of Underwood v Kelly*, 5 AD2d 740). In such a case, inability to complete a sobriety test is to be distinguished from a refusal to take the test and is not grounds for revocation of a driver's license pursuant to the provisions of Vehicle and Traffic Law § 1194. It is undisputed in the record that petitioner consented to take the breathalyzer test. The only competent medical testimony presented at the hearing showed that petitioner's failure to complete the test was caused by her extreme physical impairments which were aggravated by her emotional state at that time. The only proof to the contrary was the testimony of the deputy operating the breathalyzer

that, on each of the three occasions that petitioner placed the tube of the machine in her mouth, "there was no air being pushed through the tube into the instrument whatsoever" and "none of the machine lights were changing". The deputy concluded that petitioner was evading the test by refusing to blow into the machine. The deputy also testified that even someone with emphysema could deliver enough air into the machine to obtain a reading and that the breathalyzer machine requires no more air than is required to breathe.

In our view, the deputy was not qualified to express a medical opinion that anyone with emphysema could move an amount of air through a breathalyzer machine sufficient to determine whether that person was intoxicated (see, People v Massong, 105 AD2d 1154, 1155; Matter of Taney v Melton, 89 AD2d 1000, 1001). Here, the arresting officers were attempting to test an elderly female in a highly emotional state. After her attorney arrived and calmed his client, the officers refused to retest her even though most of the two-hour limitation within which to test an arrestee remained (see, Vehicle and Traffic Law § 1194 [1]; cf. Matter of Nicol v Grant, 117 AD2d 940). They also refused the request of the Town Justice to retest claimant, insisting that claimant had "faked" her test in violation of the statute. The record establishes that petitioner agreed to take the breathalyzer test but failed to complete it because her physical impairments, aggravated by her emotional state, prevented her from moving a sufficient amount of air to activate the machine. Accordingly, the incomplete test was not caused by conduct attributable to petitioner. St. John testified that petitioner's lung condition, aggravated by emotional stress, was the reason she was unable to complete the test. St. John stated that, under the circumstances present at the time, her capacity to expel air would have been as low as 4% to 5% of a normal 75-year-old woman. No competent proof was offered in opposition. Accordingly, we conclude that the administrative determination is not supported by substantial evidence and must be annulled.

Determination annulled, with costs, petition granted and respondent Commissioner of Motor Vehicles is directed to reinstate petitioner's driver's license. Mahoney, P. J., Weiss and Mikoll, JJ., concur.

Kane and Levine, JJ., dissent and vote to confirm in the following memorandum by Kane, J. Kane, J. (dissenting.) We respectfully dissent, as in our opinion substantial evidence supports the administrative finding that petitioner refused to take the breathalyzer test. The Administrative Law Judge was

required to credit either the testimony of the two deputies, both certified breathalyzer operators, that petitioner made *no* attempt to blow into the breathalyzer machine or to credit petitioner's and Dr. St. John's testimony that she was physically impaired and thereby prevented from providing a sufficient air sample for the breathalyzer. We may not disturb the administrative agency's resolution of this credibility issue *(see, Matter of Di Maria v Ross,* 52 NY2d 771, 772; *see also, Matter of Nicol v Grant,* 117 AD2d 940).

In any event, while the testimony of St. John established that petitioner has a number of ailments affecting her breathing, it did not establish that petitioner's lung capacity was insufficient for the purposes of the breathalyzer test. St. John stated that he was not familiar with the operation of a breathalyzer, but that one of the characteristics of emphysema is that a person cannot move a volume of air. According to St. John, petitioner could only move between 9% and 12% of a normal volume of air. St. John testified that 9% of capacity represents 190 ccs of air and 12% represents 204 ccs of air. On redirect, the deputy who administered the test to petitioner testified, as an expert on the operation of the breathalyzer machine, that the machine would take approximately 56 to 57 ccs of air to deliver a sample. He also opined that the Alco-Sensor test, for which petitioner did provide a sufficient breath sample, required about the same amount of air as the breathalyzer. The deputy's qualifications were unchallenged and his testimony with respect to the operation of a breathalyzer was uncontroverted.

The determination should, therefore, be confirmed.