Douglas Gilman v. Commissioner of Motor Vehicles and Vermont District Court, Unit No. 3, Caledonia Circuit

[583 A.2d 86]

No. 89-019

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed October 5, 1990

*Vincent Illuzzi* and *Michael R. Loignon* of *Vincent Illuzzi Associates*, Orleans, for Petitioner-Appellant.

*Dale O. Gray*, Caledonia County State's Attorney, St. Johnsbury, and *Jo-Ann Gross*, Law Clerk, Department of State's Attorneys, Montpelier, for Respondent-Appellee.

**Allen, C.J.** ■ The record contains ample support for the conclusion that defendant refused to submit to a breath test within the meaning of 23 V.S.A. § 1202. To effect a refusal under 23 V.S.A. § 1202(c), a person need only conduct himself in a manner which would lead a reasonable person in the trooper's position to believe that the person understood he was requested to submit to a breath test and manifested an unwillingness to do so. *Stockwell v. District Court*, 143 Vt. 45, 50, 460 A.2d 466, 469 (1983). A person need not show refusal by an express, affirmative statement. *Id.* at 50, 460 A.2d at 468. In the absence thereof, an officer may infer a refusal from the totality of the circumstances. *Id.*

The trooper informed defendant at the outset that he believed defendant had been operating a vehicle under the influence of intoxicating liquor and that he was required to ask defendant to give an evidentiary sample of his breath. The trooper then informed defendant of his rights under § 1202, including his right to consult an attorney at state expense. It is unnecessary to reach the issue of whether the trooper afforded defendant his right to counsel because, while defendant initially expressed a desire to contact a public defender, he later indicated a preference for Mr. Illuzzi. Defendant explained that he had "always done business" with him, could arrange to make payments for his services, and had no intention of calling any lawyer other than Mr. Illuzzi. The trial court found that after the defendant attempted to call Mr. Illuzzi he refused to make any calls to other attorneys, stating that "he had made his call, that he wanted Attorney Illuzzi and no others." This finding is amply supported by the testimony of the officer that defendant

"said he didn't want to make any more calls. He didn't want to call any other attorney. He wanted Mr. Illuzzi."

■ The trooper knew that the lawyer defendant had sought to consult was not available and that contact within the statutory time period would not take place because defendant had left a message instructing the lawyer to contact him at his home. Defendant's stance that he would take the test only after consulting a lawyer whom he knew to be unavailable was tantamount to a refusal. The superior court's denial of the petition for extraordinary relief does not constitute an abuse of discretion.

*Affirmed.*

**Dooley, J.,** dissenting. In a world in which a large percentage of cases involving motor vehicle operation and alcohol are appealed, and many of these appeals lack a meritorious issue, it is easy to miss the wheat in what seems like an endless sea of chaff. In its brief affirmance, the majority has categorized this case as chaff. It does so, however, by characterizing the facts in a way that I do not believe is supported by the record and thereby omits any consideration of the main issue raised by the appellant and decided by the superior court. The central issue is difficult and, on balance, points to a reversal. Accordingly, I dissent.

The undisputed facts are that petitioner, Douglas Gilman, was stopped while driving in St. Johnsbury and was brought to the state police barracks for processing for DWI. Before asking petitioner to take a breath test, the arresting officer read him his rights from a processing form. When asked "Do you want a lawyer?," petitioner answered, "Yes." At that point, the officer went to a call list set up by the public defender's office for night DWI calls and called each of the seven lawyers on the list. None were home. The officer then handed the telephone book to petitioner and asked him if he wanted to call any lawyer from the book. Petitioner called lawyer Vince Illuzzi, who also didn't answer. Petitioner's testimony, not disputed by the officer, was that he could not afford a private lawyer but had been represented by attorney Illuzzi in the past and felt he could work out a payment arrangement. Petitioner then refused to call any

other lawyers from the telephone book, and the officer asked him to take the test. Petitioner said he would not do so without a lawyer. It is this statement the majority finds to be a refusal.

The majority finds that we do not have to reach the question of whether there was a violation of petitioner's right to appointed counsel because "while defendant initially expressed a desire to contact a public defender," he abandoned that request in favor of an insistence on reaching lawyer Illuzzi. That conclusion is not supported by the record, and neither of the trial courts that have considered this case drew that conclusion. The undisputed facts are that the officer contacted all the public defender names, and on reaching no one, handed petitioner the telephone book to call private lawyers who clearly would have to be paid for their services. He did not give defendant the names of the lawyers on the public defender list. From the telephone book, petitioner was able to pursue one name because he thought he could work out a payment arrangement with that lawyer. Petitioner tried to contact lawyer Illuzzi *only after he was told that no public defender was available.* He never stated that he wanted lawyer Illuzzi in preference to a public defender, and the trial court did not find so, despite the quotes the majority takes out of context. He said only that he would pick no further names from the telephone book because he could not afford a lawyer.

Fact-finding is for the trial court, not this Court. The finding of facts, not supported by the evidence, is, of course, not proper for any court. I believe we must reach the issue, raised by petitioner and decided by the superior court, of the effect of the failure to provide counsel at public expense on the validity of a refusal to take a breath test. At least in this context, I find this to be a close question. Since this is a dissent and the issue may arise another day, I will only briefly outline my views.

While we have never addressed it directly, I think our precedents require us to hold that a failure to afford appointed counsel will result in a suppression of evidence of refusal or of a test result in a criminal case. In *State v. Duff*, 136 Vt. 537, 540, 394 A.2d 1145, 1146–47 (1978), this Court held that the failure of the arresting officer to inform the defendant of his right to consult with counsel prior to deciding whether to take a breath test results in the suppression of the test results in a criminal pro-

ceeding. In *State v. Gracey*, 140 Vt. 199, 201–02, 436 A.2d 741, 743 (1981), we extended *Duff* to require that the officer advise the defendant that if he is needy, he has a right to counsel at public expense. Again, the consequences were that the result of the breath test was suppressed. In both opinions, the Court indicated that it was implementing the right to counsel statute. See 13 V.S.A. § 5234. Since the right to notice of the availability of counsel, 13 V.S.A. § 5234(a), and the right to appointed counsel, 13 V.S.A. § 5233(a), are essentially coextensive, a failure to afford counsel must have the same consequence as a failure to notify of the availability of counsel. In any event, it would be illogical to require suppression where the officer fails to notify of a right to assigned counsel, but recognize no consequence for a failure to afford counsel.

The more difficult question is whether a similar consequence should occur in a refusal proceeding, which is civil and not criminal, and will result only in a license suspension. We have, however, enforced the right to counsel in refusal proceedings and vacated a refusal determination as a consequence. In *Pfeil v. Rutland District Court*, 147 Vt. 305, 309–10, 515 A.2d 1052, 1055–56 (1986), we held that the lack of a meaningful opportunity to consult with counsel means that the court can not find a voluntary refusal. *Pfeil* relies on criminal precedents but concludes that the precedents must be equally applicable to refusal proceedings:

> It would be an anomalous result, however, to allow the Commissioner to suspend a person's license to operate a motor vehicle on the highways of this state for six months where coercive or restrictive police practices affect the person's decision to refuse testing.

*Id.* at 309, 515 A.2d at 1055. We may on reflection narrow the holding of *Pfeil* to particular kinds of police practices, but at this point my initial conclusion is that the failure here must have the same consequences as the failure in *Pfeil*.

I would remand for a determination of whether petitioner was, in fact, a needy person as he claims. If he was needy, and was not afforded counsel at public expense before deciding whether to take the breath test, I do not believe the refusal determination can stand. Accordingly, I dissent. I am authorized to state that Justice Morse joins in this dissent.