[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Angel Rivera has appealed under Conn. Gen. Stat. 4-18
the decision of the Commissioner of Motor Vehicles ordering the suspension of the plaintiff's motor vehicle operator's license for a period of six months due to the plaintiff's failure to submit to a chemical test pursuant to Conn. Gen. Stat, 14-227b, as amended by 1989 Conn. Pub. Act No. 89-314. CT Page 1083
On September 7, 1990, at approximately 8:00 p. m., Officer Robert Stapelton, of the Hartford Police Department, among others, while on routine patrol, came upon a two car accident at Imlay and Hawthorne Street in Hartford. As the officer arrived at the scene, the plaintiff was in the middle of the road, staggering and slurring his words. After determining that there were injuries at the scene, the officer called for two ambulances, which transported two passengers from the plaintiff's and the driver of the other car to Saint Francis Hospital.
The officers were informed by the plaintiff that he was operating one of the cars at the time of the accident. Their investigation determined that the plaintiff, with his headlights off, proceeded west on Hawthorne Street from a parked position at the east curb of Hawthorne and Imlay Streets. The plaintiff then attempted to turn north onto Imlay Street with disregard to oncoming traffic, causing the accident with a car proceeding east on Hawthorne Street.
Based on their observations of the plaintiff, the officers asked him to perform field sobriety tests. He was unable to walk a straight line heel to toe without staggering, even after Officer Stapelton demonstrated how it should be done. He was unable to perform a turning test without falling down and was unable to touch his finger to his nose. The plaintiff refused a Horizontal Gaze Nystagmus Test.
Based on his condition and the results of the field sobriety tests, he was placed under arrest for, inter alia, operating while under the influence of drugs and/or alcohol. When the officers attempted to place the plaintiff in the police cruiser to transport him to the station, he refused to get in. He was therefore handcuffed and placed in the cruiser.
Upon his arrival at the Morgan Street jail the handcuffs were removed. He was given a medical interview informing Officer Stapelton that he is a diabetic. He was read his rights and was offered a reasonable opportunity to telephone an attorney.
The officer then requested that the plaintiff take a breath test. He refused. "He was uncooperative, swaying and wouldn't put the tube near his mouth and blow into it like I said. He kept going back and forth saying, `I refuse to take the test.' and then `I want to take the test.' He kept going back and forth." The plaintiff finally put his lips to the breath tube, but did not blow, resulting in a reading of "000".
As a result of his refusal, the police revoked the plaintiff's operator's license for twenty-four hours and issued him a temporary operator's license. Based on the police report of a refusal, the plaintiff was notified that his license was suspended effective October 12, 1990, unless an administrative hearing was required. A hearing was scheduled at the Department of Motor Vehicles and on September 19, 1990, a notice of hearing was sent to the plaintiff summoning him to appear on CT Page 1084 September 28, 1990, to determine whether his operator's license should be suspended in accordance with Conn. Gen. Stat. 14-227b, as amended.
The plaintiff appeared with counsel at the hearing. Based on the testimony of Officer Stapelton and the documents admitted into evidence, the hearing officer, Attorney Barry Goodberg, rendered a decision on September 28, 1990, finding that: (1) the police officer had probable cause to arrest the plaintiff for a violation specified in Section 1 of Public Act 89-314(2) the plaintiff was placed under arrest; (3) the plaintiff refused to submit to such a test or analysis; and (4) the plaintiff was operating the motor vehicle. As a result of the findings, the plaintiff's operator's license was suspended for six months.
The plaintiff claims the following errors in this appeal:
 1. The police officer did not have probable cause to arrest the plaintiff or a violation of Public Act No. 89-314.
 2. The plaintiff did not refuse to take the chemical alcohol test.
 3. The decision of the hearing officer was arbitrary and capricious, an abuse of discretion, and found without facts supported by the evidence.
"Appeals to the courts from administrative officers or boards exist only under statutory authority and, unless a statute provides for them, courts are without jurisdiction to entertain them." East Side Civic Assn. v. Planning Zoning Commission, 161 Conn. 558, 560,290 A.2d 348 (1971). See also, Cannata v. Department of Environmental Protection, 215 Conn. 616, 622, 577 A.2d 1017 (1990) ("The right to appeal a decision of an administrative agency exists only under statutory authority.")
"`Judicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act (General Statutes, 4-166 through4-189), and the scope of that review is very restricted. Lawrence v. Kozlowski, 171 Conn. 705, 707-708, 372 A.2d 110 (1976). Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant.' C H Enterprises Inc. v. Commissioner of Motor Vehicles, 176 Conn. 11, 12, 404 A.2d 864 (1978); DiBenedetto v. Commissioner of Motor Vehicles, 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes 4-183 (g).[1] The court's ultimate duty is only to decide whether, in light of the evidence, the [commissioner] has acted unreasonably, arbitrarily, illegally, or in abuse of [his] discretion.' Burnham v. Administrator, 184 Conn. 317, 322, 439 A.2d 1008 (1981); Riley v. State Employees' Retirement Commission, 178 Conn. 438, 441, 423 A.2d 87
(1979); see also Persico v. Maher, 191 Conn. 384, 409, 465 A.2d 308
(1983)". Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489 (1986). CT Page 1085
 I
Probable Cause
Conn. Gen. Stat. 14, 227b(a), as amended, provides: "Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine. . ." Section 14-227b(h), as amended, provides that if an individual refuses to submit to such a test, the Commissioner of Motor Vehicles shall suspend his license for a period of six months.
Further, any person whose license has been suspended shall be entitled to a hearing, which shall be limited to a determination of the following: "(1) Did the police officer have probable cause to arrest the person for. . .operating a motor vehicle while under the influence of intoxicating liquor or drugs or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis. . .; and (4) was such person operating the motor vehicle." Conn. Gen. Stat. 14-227b(f), as amended. The hearing officer found all four issues in the positive.
"Probable cause exists when the facts and circumstances within the knowledge of the officer or of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that the person arrested had committed an offense", and may be "based on circumstantial, as well as direct, evidence." (citations omitted) Clark v. Muzio, 40 Conn. Sup. 512, 514-515,516 A.2d 160 (1986); aff'd 14 Conn. App. 212, 540 A.2d 1063, cert. denied208 Conn. 809, 545 A.2d 1105. Thus, in this case, the officer, based on his observations of the plaintiff, the plaintiff's failure of the field tests, and the plaintiff's own admissions to the officer, had enough information to believe that the plaintiff had committed the offense of operating a vehicle while intoxicated in violation of Conn. Gen. Stat.14-227a.
When the police arrived at the scene, the plaintiff was in the middle of the street staggering and slurring his words. His own testimony was that he had trouble on one of the tests; and was "assertive towards" the officers. In addition, he had driven into oncoming traffic with his headlights off.
The plaintiff has claimed that these actions are consistent with a diabetic who has been deprived of food for a long period of time. He did not submit any independent medical evidence that he, in fact, is diabetic, or that his actions were the result of his lack of food. In fact, his testimony was that, as a diabetic, alcohol consumption has a detrimental effect on him, yet he had consumed two beers before the accident.
However, even assuming that his actions are consistent with those of a diabetic deprived of food, they are equally consistent with those of a person who is under the influence of alcohol or drugs. A chemical analysis would have answered the question of whether the plaintiff was in fact CT Page 1086 under the influence of alcohol or drugs.
Based on the record in this case, the police had probable cause to place the plaintiff under arrest for operating while under the influence of alcohol or drugs.
 II
Refusal
When the plaintiff got behind the wheel of his motor vehicle on September 7, 1990, he was deemed as a matter of law, to have given his consent to a chemical analysis of his blood, breath or urine, should he be arrested for operating while under the influence. Conn. Gen. Stat.14-227b(a), as amended. The plaintiff has not contested that he was arrested for DWI and, in fact, admitted in his hearing that he had been drinking before driving.
The supreme court has stated that the present statutory scheme, whereby a motorist is given an opportunity to refuse a test to which he is already deemed by law to have given his consent, "means only that the legislature has chosen to enforce mandatory testing for intoxication by the least oppressive means, and in such manner as avoid hostile encounters between the motorist and police." Buckley, supra at 8.
There is one reported decision of the New York Court of Appeals, under essentially the same statutory provisions, that is directly on point. In Mary V. Beaver v. Appeals Board of Administrative Adjudication Bureau, State Department of Motor Vehicles, 499 N.Y.S.2d 248,117 App.Div. 956
(1986), the plaintiff, a 75-year old female physician, was arrested for driving while intoxicated and requested to take the breath test. The plaintiff attempted to blow into the machine three times, but was unable to produce a sufficient sample of air. Id. at 249. The officer ultimately certified a refusal and a hearing was held. Id. At the hearing the plaintiff's personal physician testified in detail that the plaintiff "had suffered for a long time from a number of ailments affecting her breathing, including an advanced state of emphysema." Id. The administrative law judge heard this testimony but credited the testimony of the police officers and revoked the plaintiff's license. Id. at 250.
The appellate division reversed the administrative decision, holding that, "[a] finding of refusal cannot be upheld if consent and cooperation were given and an opportunity given for a proper test which failed for some reason not attributable to petitioner." Id. at 250. Two justices of the appellate division dissented from this holding. The dissenting opinion states that "substantial evidence supports the administrative finding that petitioner refused to take the breathalyzer test." Id.
The court of appeals agreed with the dissenters. Beaver v. Appeals Board of Administrative Adjudication Bureau, State Department of Motor CT Page 1087 Vehicles, supra. In reversing the appellate division decision, it held:
 Evidence established that motorist refused to take breathalyzer test by making no attempt to blow into breathalyzer machine; evidence indicated that motorist had a number of ailments affecting her breathing but did not establish that motorist's lung capacity was insufficient for purposes of breathalyzer.
Id.
Several other state court decisions are in accord with New York decisions on the interpretation of "refusal". In 1983, the supreme court of Vermont addressed this matter for the first time. See Stockwell v. District Court of Vermont, 460 A.2d 466 (1983). The court held that a refusal to submit to testing may be evidenced by not only an express, affirmative statement of refusal, but may be found from the totality of surrounding circumstances, "that is, one may refuse the test by his deeds as well as his words." Id. at 469. The court reached this holding after review of several other state court decisions cited in its opinion. The rule adopted in Pennsylvania is similar. It is that "anything substantially less than unqualified assent to proper testing is a refusal." Croissant v. Commonwealth, 539 A.2d 492 (1988). In the case cited, the appellant completed the test once, with a .30 reading, but failed to provide enough air for the second reading required by the statute. Id. at 494.
In Minnesota, the failure to provide adequate breath samples is a refusal, unless it is established that such failure is caused by physical inability. See Corriveau v. Commonwealth of Public Safety, 380 N.W.2d 214
(1986); Burke v. Commissioner of Public Safety, 381 N.W.2d 903 (1986). Similarly, a lack of any vocal response to the request to take the test, coupled with testimony that the petitioner was at all times "willing" to take the test, has been held by the appellate court to be a refusal, without opinion. Robert Poluhowich v. Commissioner, 18 Conn. App. 823, Conn. L.J., June 13, 1989, affirming Superior Court, Judicial District of Litchfield, #046988.
When the principle stated in various ways in all of these cases is applied, the issue again devolves on the weight and credibility of the evidence in the hearings held by the commissioner. The plaintiff has argued that he was unable to perform the test due to his medical condition, presumably is diabetes. He further claims that his hands were cuffed at the time of the test. Subsection (j) of 14-227b as amended by 1989 Conn. Pub. Act No. 89-314 states:
 The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable.
No evidence was introduced at the hearing to substantiate the plaintiff's claim that he was a diabetic. Even assuming that the CT Page 1088 plaintiff is in fact a diabetic, no evidence was introduced to demonstrate that such a condition would in any way affect his ability to perform a breath test, let alone to show that such a test would be "inadvisable." There was also contradictory testimony as to whether the plaintiff was handcuffed at the time of the est. Again, assuming arguendo, that his hands were cuffed at the time of the test, absolutely no evidence was offered, to demonstrate that it is impossible or difficult to perform a breath test while handcuffed.
 III
Abuse and Discretion
The plaintiff does not contest that he was operating the motor vehicle at the time of the accident. He in fact admitted it to the officers at the scene and at the administrative hearing. Nor does he contest that he was placed under arrest.
With respect to the other two issues to be found by the hearing officer, probable cause and refusal, there was sufficient evidence to support his decision.
Based upon the evidence adduced at the suspension hearing, it cannot be said that the hearing officer acted unreasonably, arbitrarily, illegally, or in abuse of his discretion, and therefore this appeal is therefore dismissed.
PICKETT, J.