## Charles L. Rash v. Hayden L. Waterhouse

[ 207 A.2d 130 ]

December Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 2, 1965

*Maxwell L. Baton* for plaintiff.

*Lawrence Miller,* with *C. O. Granai* and *M. Martin Leinwohl* on the brief, for defendant.

**Barney, J.** In an action for alienation of his wife's affections, the plaintiff recovered judgment against the defendant. The defendant claims a reversal is required because the failure to strike out certain evidence, the insufficiency of the evidence to support a verdict for the plaintiff and the failure of the trial court to set aside the verdict infected the award with prejudicial error.

The questioned testimony came during the plaintiff's main case. He testified to the effect that he observed that his wife, at a time relevant to this litigation and during a period of non-access by him, gained, then suddenly lost, certain physical characteristics comparable to those that had occurred when she had been pregnant with their three children. All of this was testified to without objection.

A question was then propounded concerning the relationship of the time those characteristics were lost and a vacation period the wife

was alleged to have taken. This inquiry was objected to as to form because of the use of the word "pregnant." The objection was ultimately overruled, in part, at least, because this same phraseology had already been used in previous examination without objection. An objection to the content was unavailable, even if made, since the same subject-matter had already been testified to without objection. *Jaqueth* v. *Guilford School District,* 123 Vt. 382, 386-7, 189 A.2d 558.

Other than the single objection as to form, the defendant raised no question as to any of this testimony relating to the physical appearance of Mrs. Rash at this time. At the close of the plaintiff's case, however, the defendant moved to have all this testimony stricken. Upon the denial of that motion he moved for a mistrial, which was also refused. At the close of all the evidence he renewed his motion to strike this testimony.

In this Court the defendant contends he was fatally prejudiced because this evidence remained in the case without supporting expert testimony as to the fact of pregnancy. Defendant's standing to argue this issue is compromised by the state of the record, because, by failing to object to the testimony, the defendant waived his right, if any, to have this evidence stricken. *State* v. *Watson,* 99 Vt. 473, 477, 134 Atl. 585.

His argument here is addressed to a claimed failure to make this evidence competent by the introduction of further supporting evidence. As was pointed out in *Towle* v. *St. Albans Publishing Co.,* 122 Vt. 134, 141, 165 A.2d 363, the right to have evidence stricken for failure to produce supporting evidence is premised on a timely objection having been originally interposed. The motion to strike was correctly denied.

The motion for a mistrial was addressed to the court's discretion and the denial of the motion will be held erroneous only if prejudice is affirmatively made to appear. *Lewis* v. *Gagne,* 123 Vt. 217, 220, 185 A.2d 468.

As we have seen, the evidence now claimed to be prejudicial and a proper basis for a mistrial, came in without challenge from the defendant. He must, therefore, assume the responsibility for whatever prejudice to his case derived from this evidence. He made it available for the consideration of the jury. *State* v. *Hedding,* 122 Vt. 379, 383, 172 A.2d 599. He cannot, therefore, be heard to say that

it was error for the court to refuse to base a mistrial ruling on this evidence.

■ These are not mere technical rulings. Sound policy considerations underlie them. If questions as to the prejudicial effect of unchallenged testimony need not be raised until the close of evidence, litigation could be rendered uncertain, inconclusive and punitively protracted. A party who allowed inadmissible evidence to come in without objection could gain an unconscionable advantage. He would, in effect, have a built-in "veto" over the litigation if it took a course unfavorable to him, for he could then bring forth his unmentioned assignments of error and require a retrial.

This would be a flagrantly unjust situation, since it would derive from his own failure to forthrightly point out error prejudicial to him at a time when prevention or correction of its adverse effect was still possible. For this reason, even though other bases for supporting the rulings of the trial court in connection with this evidence may exist, we confirm its denial of the motion to strike and the motion for a mistrial on this ground.

The complaint in this case is in two counts, one alleging alienation by enticement and the other alleging criminal conversation. The defendant insists that the verdict and judgment cannot stand because there is no evidence to establish that the defendant caused the alienation under count one, or to prove criminal conversation under count two.

The weight of the evidence is not for this Court. The question must be treated as a review of the lower court's denial of defendant's motion to set aside the verdict. This motion was grounded on two contentions: that the verdict was unsupported by the evidence, and that it was against the evidence. The first contention raises an issue of law; the second is reviewed as a discretionary ruling of the trial court. *Dashnow* v. *Myers,* 121 Vt. 273, 278-9, 155 A.2d 859.

A claim that a verdict is unsupported by the evidence is tested like a ruling on a defendant's motion for a directed verdict. The evidence is examined in the light most favorable to the plaintiff, in unmodified form, to determine if the ingredients essential to support a verdict for the plaintiff have been evidenced. *Knight* v. *Willey,* 120 Vt. 256, 259, 138 A.2d 596.

The testimony disclosed that in 1955, about a year after Mrs. Rash started working as a waitress in the Park Restaurant, the defendant came to Barton. He became acquainted with Mrs. Rash at that time. He knew she was married and had children, and also knew who her husband was. The defendant frequented the restaurant almost daily. By 1959 he was helping out around the restaurant without pay and spending most of his free time there. In 1960, the defendant and Mrs. Rash purchased the restaurant together, each acquiring a one-half interest, and this arrangement still existed at the time of trial in 1962.

The defendant testified that he "liked" Mrs. Rash. He acknowledged that he and the plaintiff's wife took numerous trips together, not all of which were on business. They went to Sutton, Quebec, to visit his mother; they went to Newport evenings to eat; they went to Burlington; they went to Berlin, N. H., for shoes; they went to the Tunbridge Fair. The plaintiff was not invited or consulted about these excursions and, of course, did not go.

About two years after the defendant came to Barton, the plaintiff's wife ceased to cohabit with him and took a separate bedroom. The plaintiff testified that he and his wife had a good and happy marriage up until the time she became acquainted with the defendant. She then started to become more and more distant, neglecting her housework and wifely duties, until the parties finally separated and divorce proceedings were brought, about a year before this trial. According to the plaintiff, after his wife turned away from him, her whole interest was in the defendant.

During this period the plaintiff's wife was coming home anytime from two-thirty to four o'clock in the morning, although the restaurant closed around midnight. The plaintiff on many occasions observed his wife and the defendant returning to the restaurant after closing time, after they had been out together. She was identified as having been parked with the defendant by the roadside in his car on several occasions.

Mrs. Rash made use of the defendant's car as her own, frequently. She called on him rather than her husband when she was in difficulty on the road. On one occasion she met her husband on the road a half mile from their home when she had a flat tire. She refused his offer of help and called the defendant who had to travel five miles to come to her aid.

Plaintiff's wife took the pictures of the plaintiff out of her pocketbook and replaced them with pictures of the defendant. After the plaintiff discovered this, he took away the pictures. His wife later recovered them and burned them.

All of the essentials to maintain the action are here. The defendant knowingly paid his addresses to another man's wife, in disregard of the man's marital rights, which sufficiently establishes the element of malice. *Button* v. *Knight*, 95 Vt. 381, 387, 115 Atl. 499. The loss of consortium is unchallenged, and its relationship to the activities of the defendant is sufficiently established by the evidence. The question was properly for the jury, as the court correctly held. Compare *Gaudette* v. *Taylor*, 108 Vt. 108, 109, 183 Atl. 335.

Turning to the discretionary aspect of the court's rulings, we find them also sustained. The defendant bases his position largely on the claimed error in dealing with the testimony sought to be stricken. This ground has already been shown to be unavailing. Although the evidence in the case was controverted, it did not preponderate in favor of either party to a degree requiring this Court to say that the lower court abused its discretion by refusing to set aside the verdict. *O'Brien* v. *Dewey*, 120 Vt. 340, 348, 143 A.2d 130.

The defendant complains particularly here that the evidence was insufficient to support the amount of damages awarded. The jury had a right to assess punitive damages. *Button* v. *Knight*, supra, 95 Vt. 381, 387, 115 Atl. 499. The question of damages in such a situation is entirely for the jury, unless it appears that they are so insufficient or excessive that they must have been improperly arrived at. Such a determination has to be made by the trial court in the exercise of its discretion. *Oligny* v. *Underwood*, 116 Vt. 193, 197-8, 71 A.2d 250. There has been no demonstration that that discretion was abused.

As an additional ground, the defendant argues that, since the trial court expressed disagreement with the jury decision, his motion to set the verdict aside should have been granted. This position confuses the function of judge and jury. The trial court clearly followed the correct approach to the issue when it found that, in spite of its own disagreement, the verdict had adequate support in the record. This is the test, and the court is not to interject itself unless the result

is completely without justification, as spelled out in *Grow* v. *Wolcott*, 123 Vt. 490, 493-4, 194 A.2d 403. The ruling was correct.

*Judgment affirmed.*