## Terrence W. Craw v. District Court of Vermont, Unit No. 1, Windham Circuit and William H. Conway, Jr., Commissioner of Motor Vehicles

[549 A.2d 1065]

No. 86-602

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed June 17, 1988

*Jesse M. Corum, IV,* and *Edwin P. Gale, Law Clerk (On the Brief)* of *Gale, Gale & Corum,* Brattleboro, for Plaintiff-Appellant.

*M. Patricia Zimmerman* and *Mark T. Cameron, Windsor County Deputy State's Attorneys,* White River Junction, for Defendants-Appellees.

**Peck, J.** Plaintiff, Terrence W. Craw, appeals from a judgment of the Windham Superior Court upholding the suspension of his automobile driver's license as ordered by the district court. The district court's order was predicated on his alleged refusal to submit to a blood-alcohol test after having been stopped on suspicion of operating under the influence of intoxicating liquor (DUI). See 23 V.S.A. § 1205(a). We affirm.

The proceedings before the superior court were not evidentiary in nature. The parties agreed that the case could be decided on the transcript of the refusal hearing in district court,* the memorandums submitted, and the arguments of counsel.

---

\* The transcript of the district court proceedings is also before this Court as part of the record on appeal.

The sole issue presented by plaintiff for our review is whether a motorist, stopped by the police on suspicion of DUI, can be found, on the basis of his conduct alone, to have refused to submit to a breath test as required by 23 V.S.A. § 1202, when he was not asked in specific terms to give a sample of his breath, nor advised of his attendant statutory rights as provided by 23 V.S.A. § 1202(c).

Although this is a single issue case, the result hinges on the facts disclosed by the record. For the most part, they are established by the testimony of two police officers who testified for the prosecution during the evidentiary hearing in the district court; the plaintiff did not take the stand, nor was there any direct evidence offered on his behalf. Nevertheless, because of the importance of the factual pattern to an understanding of our conclusion, it is appropriate that the facts be outlined here in some detail.

At approximately ten o'clock in the evening of March 30, 1986, an officer of the Vernon Police Department, patrolling in a police cruiser, observed a truck being operated in a manner he considered erratic. After some difficulty, since the operator appeared to ignore the siren and flashing lights of the cruiser, the officer succeeded in stopping the truck. The operator and sole occupant was the plaintiff.

The officer noted some slurring in plaintiff's speech and glassiness in his eyes. At the former's request, plaintiff attempted certain dexterity tests which the officer regarded as having been performed in an unsatisfactory manner. This led the officer to believe that plaintiff was under the influence of intoxicating liquor, and the officer asked him to take a nonevidentiary alco-sensor test; plaintiff refused this request.

Next, the officer told plaintiff he would have to go with him to the police station for DUI processing. Again, plaintiff refused. At the hearing in the district court, the officer testified: "He said he did not want to do any further testing, that he had done enough . . . I asked him more than once to come back to the office for the test — for the testing — and he refused to come." Plaintiff announced instead that he intended to go home.

Because of plaintiff's belligerent refusal to cooperate, the officer apparently anticipated there might be trouble. He returned to the cruiser and radioed for backup assistance. When he returned to the truck he found the plaintiff had reentered the cab and was

prepared to drive away. The officer warned him not to drive and tried to reach the keys, but plaintiff pushed his hand away, started the truck, and drove off with the officer again pursuing in his cruiser.

The pursuit was relatively short; plaintiff drove to the residence where he lived as a tenant. The officer arrived and followed him into the house, out again through another door, and into a cornfield at the rear. At this point a second officer appeared in response to the earlier backup call. The two followed plaintiff, finally confronting him in the field.

The second officer tried to persuade the plaintiff to accompany them to the station for processing. These requests were countered with cursing by plaintiff and statements that he wasn't going anywhere, and attempts at violence. The officer testified that "Mr. Craw was extremely upset . . . displaying violent tendencies." It became apparent "it was going to be a physical confrontation by the actions of Mr. Craw. . . . Mr. Craw was threatening the life of [the first officer], swinging, clenching his fist, reaching out to what appeared to be strangling — attempting to take the throat of [the first officer]."

The curtain closed on this ominous scene when plaintiff's landlord appeared and agreed with the police to take the keys to the truck. He gave further assurance that he would take care of plaintiff and not permit him to drive again that night. The second officer, who was the superior, convinced that plaintiff would not come to the station voluntarily for processing, and believing that he would probably be returned to his residence after processing in any event, accepted the landlord's assurance and the officers left. They believed this course of action to be the most salutary under the circumstances in order to avoid needless violence and possible injury to plaintiff, his landlord and to themselves.

Initially, the superior court concluded correctly that it had no jurisdiction under V.R.C.P. 75, the device by which plaintiff attempted to reach that court for a review of the district court's order. See *Pfeil* v. *Rutland District Court*, 147 Vt. 305, 306, 515 A.2d 1052, 1054 (1986). But following the lead of this Court in *Pfeil*, the superior court treated the appeal as a petition for extraordinary relief, and accepted jurisdiction on that basis. There was no objection to this procedure by either party, and we find no fault with the ruling. Nevertheless, we believe it is appropriate as a cautionary admonition to repeat our warning stated in *Pfeil*:

"[O]ur holding here in no way guarantees persons charged with DUI the right to appeal from a district court's ruling in these matters." *Id.* at 308, 515 A.2d at 1055.

Departing from the procedural aspect of the hearing before the superior court, it is clear that, in reaching their respective but identical decisions, both the district court and the superior court relied on *Stockwell* v. *District Court*, 143 Vt. 45, 460 A.2d 466 (1983). In that case we held that, in the absence of an express statement by a DUI suspect declining to be tested, a refusal "may be implied from the totality of the surrounding facts and circumstances"; this necessarily includes the suspect's conduct. *Id.* at 50, 460 A.2d at 468. Similarly, the State argued below and before this Court that *Stockwell* should dictate the outcome in this case.

On the other hand, plaintiff argues strenuously that his case is distinguishable from *Stockwell* on their respective and controlling facts. In *Stockwell*, the DUI suspect was taken, albeit forcibly and with continuing resistance, to the state police barracks for processing. At the barracks the suspect was asked expressly to submit to a breath test for evidentiary purposes. He was fully advised of the statutory rights attendant upon the request, and he talked by phone with a public defender contacted on his behalf by the police. He was informed that, from that point, he had thirty minutes in which to decide whether he would agree to or refuse the requested breath test. Nevertheless, before the expiration of the thirty minutes the police concluded that he had refused the test. This conclusion was based on his ongoing violent and abusive conduct both verbal and physical. In our opinion disposing of the case, this Court said:

> Plaintiff was consistently belligerent and uncooperative throughout. He showed not the slightest indication that he was giving any serious consideration to the request [to submit to testing] made of him several times; he pushed the officers well beyond the limits of any further necessary patience. . . .
>
> On the record before us we hold that the police were justified in concluding . . . that plaintiff had refused to submit to testing [although there had been no express refusal].

*Id.* at 51, 460 A.2d at 469.

In attempting to distinguish the matter before us from the earlier case, plaintiff points out that, unlike *Stockwell*, the Vernon

police never asked him expressly to take a breath test, nor did they advise him of the statutory rights which normally accompany such a request. He concludes that he could not be found to have refused a test he was never asked to take.

We are not persuaded by this argument. It draws too fine and technical a line which leads to a statutory absurdity. In affirming the suspension order of the district court, Superior Judge O'Dea said that the officers reached their decision against further violence, with its potential for injury to the plaintiff, the landlord and themselves, when they became satisfied that he "would continue his violent and dangerous resistance to their efforts to process the petitioner consistent with his statutory rights."

It is manifest here that the police were performing their lawful duties in a lawful manner. They were met with further criminal conduct on the part of plaintiff: resistance, with violence, to an attempted arrest. Judge O'Dea wrote further:

> To say that a police officer must recite a motorist's rights in audible tones while chasing a violent citizen across a cornfield was too absurd for the trial judge in the District Court and too absurd for this trial judge. In this case [plaintiff] himself deprived the police officers of any opportunity to apprise him of his rights, and now as a reward for his outrageous behavior he asks the Court to find that he was deprived of his rights.

We share these sentiments; they have the persuasive merit of plain common sense. But equally significant, as noted in our statement of the facts, after his questionable performance of certain dexterity tests at the scene of the initial stop, plaintiff refused the alco-sensor test. He refused the request to accompany the officer to the police station for testing, saying he did not want any more tests, "that he had done enough." He drove away from the scene in outright defiance of the officer's express injunction against further driving. Later, when confronted by the police in the field behind his residence, he refused once again to go with them to the station for processing. He countered their requests with cursing and attempted assaultive violence.

While plaintiff may be correct in his assertion that he was not asked expressly to take a "breath test" in specific words, his refusals to take an alco-sensor test and to go to the station for the expressed purpose of testing cannot be overlooked. He gave every

indication that he would refuse to comply with virtually any request made of him — with violence if need be.

Plaintiff's argument would have this Court hold that, under the facts here, the controlling statutes must be construed to require the police to verbalize a scrupulously defined request, together with a statement of parallel rights, to a physically violent, defiant and cursing DUI suspect, capturing and restraining him if necessary in order to do so, at the risk of serious physical injury to all persons involved, before a refusal can be implied from a suspect's conduct. Such a holding would glorify a technicality and exalt an absurdity. A presumption obtains against a construction that would lead to absurd results. See *Menut & Parks Co.* v. *Village of St. Johnsbury*, 114 Vt. 41, 45-46, 39 A.2d 342, 345 (1944).

We agree with the view of both courts below, and hold that, on the facts, this case is controlled by our decision in *Stockwell*. Plaintiff's egregious and continuing conduct justified the police in concluding that he had refused any further testing that might be asked of him. In the words of *Stockwell*, "he pushed the officers well beyond the limits of any further necessary patience." *Stockwell*, 143 Vt. at 51, 460 A.2d at 469. If, as plaintiff appears to suggest, our holding here will constitute another turn of the screw, tightening our previous holding, it is fully justified on the record before us.

*Affirmed. The temporary stay of the suspension order is dissolved. The order to be enforced by the Commissioner of Motor Vehicles pursuant to the provisions of 23 V.S.A. § 1205(a).*