# Charles P. O'Brien v. The Island Corporation

[596 A.2d 1295]

No. 87-061

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 28, 1991

136

*Thomas W. Costello* and *Ardith L. Baldwin* of *Thomas W. Costello, P.C.,* Brattleboro, for Plaintiff-Appellant.

*Miller, Cleary & Faignant, Ltd.,* Rutland, for Defendant-Appellee Island Corp.

*Lisa Chalidze* of *Hull, Webber & Reis,* Rutland, for Defendant-Appellee Aetna Casualty & Surety Co.

**Allen, C.J.** Plaintiff appeals from a judgment for defendant Island Corporation (Island) following a jury verdict in its favor and the grant of summary judgment for defendant Aetna Casualty and Surety Company (Aetna). We affirm.

The action resulted from personal injuries sustained by plaintiff in a building owned by Island and insured by Aetna. At the time of the accident, plaintiff was employed by a corporation which had leased the premises from Island. One of plaintiff's duties was to keep the boiler on the premises operating so as to prevent the pipes and the heating system from freezing. In the course of this employment he entered the boiler in order to remove ashes from a firebox platform and became trapped therein when the door closed upon his leg.

In his complaint plaintiff alleged that Island reserved control over the premises, breached its duty to exercise reasonable care to provide him with premises which were reasonably safe and free from latent defects, and failed to warn him of dangerous and defective conditions on the premises. In an amended complaint, he alleged that Island breached a statutory duty created by 21 V.S.A. § 241(b) relating to the operation of boilers.

The allegations against Aetna were that it failed to fully and properly inspect the area in question and to warn plaintiff of the danger. We first address plaintiff's claims against Aetna.

## I.

Plaintiff contends that the trial court erred in granting Aetna's motion for summary judgment. The undisputed material facts are that Aetna issued a policy of insurance to Island prior to the date of the injury to plaintiff. The policy contained a condition relating to inspection which reads in pertinent part as follows:

> The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

Aetna did not inspect Island's premises before the date of plaintiff's injuries.

Plaintiff maintains that Aetna may be liable under § 324A of the Restatement (Second) of Torts (1965). In *Derosia v. Liberty Mutual Insurance Co.*, 155 Vt. 178, 583 A.2d 881 (1990), we held that an insurance carrier could be subjected to liability where it undertook to render a specific service to its insured which was necessary for the protection of a third person and its failure to exercise reasonable care in so doing resulted in (a) an increased risk of harm to the person, (b) the assumption by the actor of a duty owed to the third person, or (c) harm to the third person resulting from reliance on the understanding. *Id.* at 182–83, 583 A.2d at 883–84.

The fundamental problem with plaintiff's argument, however, is that Aetna did not contract or promise to inspect the premises and thus it did not undertake to assume Island's duty. It simply obtained its insured's permission to inspect the property.

Plaintiff further contends that Island relied upon Aetna to inspect the premises, and that evidence of the reliance raised

an issue of material fact which should have precluded the grant of summary judgment. An examination of the testimony upon which plaintiff relies discloses that Island relied upon safety inspections by carriers other than Aetna. Accordingly, we find no error in the grant of Aetna's motion for summary judgment.

## II.

Plaintiff also makes a variety of claims against Island, none of which warrant reversal. The majority of plaintiff's claims are directed at the court's instructions to the jury. Specifically, plaintiff argues that the court committed prejudicial error by instructing the jury that it must determine whether or not defendant Island, in its lease arrangement with Railroad Salvage Company, retained control over the boiler in question at the time of plaintiff's injury as a condition precedent to any liability on the part of defendant. Plaintiff also argues that the court, through its jury instructions, erroneously restricted the jury's consideration of control to the lease arrangement between Island and Railroad Salvage, that our rule relating to landlord liability should be changed, that the court erred in not granting his motion for a mistrial, and that the court erred by failing to charge the jury on his theories of breach of warranty and strict liability.

## A.

The trial court instructed the jury that it must determine whether Island retained control over the boiler in question at the time plaintiff was injured and that, if it so found, Island then had the duty to keep the premises in a safe and suitable condition. It further instructed the jury that by statute a person shall not operate, cause to be operated or permit to be operated any boiler or pressure vessel under his control or ownership in a manner which causes or is likely to cause harm to other persons or property,[1] and that a violation of this statute could be considered as evidence of negligence.

---

[1] According to 21 V.S.A. § 241(b):

> A person shall not operate, cause to be operated, or permit to be operated any boiler or pressure vessel under his control or ownership, in a manner which causes or is likely to cause harm to other persons or property.

The court's instruction that the jury had to determine whether Island retained control of the premises was required by plaintiff's theories for recovery. He had alleged and offered proof that Island had reserved control over the premises "and, in particular control over said furnace." He argued to the jury that "the question for you . . . is what measure of control was reserved." When the instruction was given our law was well settled that a landlord could not be subject to liability founded on negligence unless the landlord reserved control over the area where the injury occurred. *Waite v. Brown*, 132 Vt. 20, 25, 312 A.2d 915, 916 (1973); *Cameron v. Abatiell*, 127 Vt. 111, 119, 241 A.2d 310, 315–16 (1968).[2] Plaintiff also sought recovery under § 241(b), which in one alternative required the jury to determine whether the boiler was under Island's control. The court submitted interrogatories to the jury, one of which required it to determine whether Island had retained control over the boiler at the time of plaintiff's injury. In its explanation of this interrogatory, it informed the jury that if it found that Island did not retain control it was to sign defendant's verdict and go no further with the case.

■■ Plaintiff argues that he was thus deprived of jury consideration as to whether liability could be imposed under § 241(b) by virtue of defendant's ownership alone. The intent of the statute is to place the responsibility for safe operation upon the person operating the boiler, whether it be the owner or the one in control. The argument that liability could be imposed upon one who does not have the ability to avoid it leads to an unjust, unreasonable and absurd consequence; a result we are to avoid when construing a statute. *Craw v. District Court*, 150 Vt. 114, 119, 549 A.2d 1065, 1069 (1988). The premises here were leased to Railroad Salvage Company, and Island could no longer enter for the purpose of controlling the manner of operation. Absent a reservation for such entry it would be unlawful. *Livaditis v. American Casualty Co.*, 117 Ga. App. 297, 301–02, 160 S.E.2d 449, 452 (1968). Even with such a reservation, an owner would be required to constantly monitor the operation of

---

[2] As the dissent notes, considerable doubt was cast upon the future of the control test in *Favreau v. Miller*, 156 Vt. 222, 228, 591 A.2d 68, 72 (1991). We decline to address the issue here for reasons stated later in the opinion.

the boiler to avoid liability if plaintiff's construction of the statute were accepted.

■■ The law of this jurisdiction has long been that a tenant having control of the premises is, so far as third persons are concerned, the owner and that such persons must seek redress from the tenant. *Beaulac v. Robie*, 92 Vt. 27, 32, 102 A. 88, 90 (1917). We must presume that the Legislature did not intend to overturn a long-established principle of law unless such an intention appears by express declaration or by necessary implication. *Gould v. Parker*, 114 Vt. 186, 190, 42 A.2d 416, 418 (1945).[3] We find no clear intent to change this law in the applicable statute.

The argument advanced by plaintiff might well lead to even more irrational consequences when applied to 21 V.S.A. § 251(b), which provides:

> A person shall not maintain, keep or operate any premises or any part thereof, or cause to or permit to be maintained, kept or operated, any premises or part thereof, under his control or ownership in a manner which causes or is likely to cause harm to other persons or property in case of fire.

Under the reasoning urged by plaintiff, a lessor of a residential property might be liable under § 251(b) for the tenant's storage of flammables, obstruction of exits, failure to provide or service alarms, or any other tenant acts or omissions causing harm in case of fire, even though the lessor would not have the means to alleviate or eliminate the exposure. The Legislature could not have intended such consequences under either statute. The in-

---

[3] There is serious doubt about whether the Legislature intended that a civil remedy exist for a violation of § 241. The Legislature has created private remedies for unlawful employment practices, 21 V.S.A. §§ 232, 495b(b), discrimination in the sale or rental of real estate, 9 V.S.A. § 4506(a), dram shop violations, 7 V.S.A. § 501, to name a few. The same Legislature which enacted 21 V.S.A. § 241 afforded the victims of unlawful mischief a private right of action five days after the passage of § 241. See 13 V.S.A. § 3701(f). While this Court may determine that such a remedy is appropriate in furtherance of the legislative purpose, Restatement (Second) of Torts § 874A (1979), it should be hesitant to do so when it is clear that the Legislature could have done so, knew it could do so, and did not do so. See *Burnette v. Wahl*, 284 Or. 705, 711–12, 588 P.2d 1105, 1109 (1978) (en banc).

tent was to impose the duty upon the person with the ability to avoid the harm.

■ Because liability could not be imposed under § 241(b) by reason of ownership alone on the facts presented there was no error in the instructions.

## B.

■ Plaintiff also argues that the trial court erroneously allowed a witness to testify as to the contents of a letter containing the terms of the lease arrangement between plaintiff's employer and defendant Island. No objection was made to any of this testimony and the issue is, therefore, not before us on appeal. *R. Brown & Sons, Inc. v. Credit Alliance Corp.*, 144 Vt. 142, 145, 473 A.2d 1168, 1170 (1984).

The failure of plaintiff to object to the absence of an instruction on breach of warranty and strict liability also precludes review by this Court. V.R.C.P. 51(b); *McCrea v. State*, 138 Vt. 517, 520, 419 A.2d 318, 319 (1980).

## C.

■ Plaintiff further urges that our rule absolving a landlord of liability for defective conditions on the premises absent possession and control is archaic and should be abolished. This argument is raised for the first time on appeal. Indeed, in a supplemental memorandum in support of his motion for a new trial, plaintiff stated that "he is not attempting to 'change the law of control in premises liability cases.'" In his trial brief, plaintiff contended that defendant retained the furnace under its control and because of such control owed a duty to plaintiff to keep the premises reasonably safe. The argument that plaintiff now makes was not made at trial. Plaintiff's objection to the instruction as initially given on control did not go to the issue of whether liability could be imposed on the landlord absent control, but rather to the extent of control in this case. Thus, the unobjected-to instruction on control became the law of the case and plaintiff will not be heard to urge overruling of long-established law on appeal absent a challenge thereto in the trial court. See *In re Johnston*, 145 Vt. 318, 321, 488 A.2d 750, 752 (1985) ("Issues not raised below will not ordinarily be considered when presented for the first time on appeal.").

## D.

 Plaintiff contends finally that the trial court erred in failing to grant his motion for a mistrial following a question by defense counsel regarding suit by the plaintiff against other defendants. Counsel for the plaintiff and defendant Island elicited evidence that inspections of the premises had been made by others prior to the time that plaintiff was injured. Defense counsel then elicited from the president of Island that some of those inspections were conducted by "insurance inspectors" for insurance companies. He then asked, "And isn't it true, Mr. Read, that Mr. Costello [plaintiff's counsel] sued those defendants in this very case?" Objection was made and the question was not answered. At a bench conference following the objection, plaintiff first moved for a mistrial and in the event of its denial to be allowed to "go into that area ourselves without being under the consequences of a mistrial or expenses against us. . . . [W]e should be able to tell the jury that one insurance company settled and paid money." The court ruled that "the door is open. I am going to let it all in now." Plaintiff argues that the inquiry was improper and prejudicial under *Slayton v. Ford Motor Co.*, 140 Vt. 27, 29, 435 A.2d 946, 947 (1981). The proscription in *Slayton,* however, was against informing the jury of the fact of settlement or the amount thereof between plaintiff and one or more co-defendants. The unanswered question did not furnish such information nor did it furnish information from which the improper inferences sought to be avoided in *Slayton* could be drawn. A motion for a mistrial is committed to the discretion of the court, and its denial is error only if prejudice is shown. *Rash v. Waterhouse*, 124 Vt. 476, 477, 207 A.2d 130, 132 (1965). Such is not the case under these facts.

*Affirmed.*

**Morse, J.,** concurring. I concur in nearly all of the Court's opinion but write separately because I do not accept the Court's analysis in II A.

My reading of 21 V.S.A. § 241 (entitled "General duties") differs from the Court's and the dissent's in a fundamental respect. That section provides:

(a) A person shall not install or maintain a boiler or pressure vessel which is unsafe or likely to be unsafe to other persons or property.

(b) A person shall not operate, cause to be operated, or permit to be operated any boiler or pressure vessel under his control or ownership, in a manner which causes or is likely to cause harm to other persons or property.

Violating § 241 should not be "evidence of negligence" because it is not the type of safety statute which proscribes specific conduct, for example, exceeding a speed limit. To the contrary, § 241 contains no standards of conduct whatsoever.

As a general rule, a court may adopt the requirements of a statute as the applicable standard of care in a particular tort action, and, when it does, violating the statute either becomes negligence per se, creates a presumption or prima facie case of negligence, or is some evidence of negligence. W. Keeton, Prosser and Keeton on the Law of Torts § 36, at 220, 230 (5th ed. 1984). But, in my opinion, the better-reasoned view is that such a statute must express a rule of conduct in specific, concrete terms, not merely set out a general or abstract standard of care. See, e.g., *Rimer v. Rockwell Int'l Corp.*, 641 F.2d 450, 454–55 (6th Cir. 1981) (regulations making pilot responsible for determining whether aircraft is airworthy before takeoff did not create specific enough duties to be basis of negligence per se instruction); *Dahle v. Atlantic Richfield Co.*, 725 P.2d 1069, 1073–74 (Alaska 1986) (statute requiring employer to keep place of employment free of recognized hazards did not set forth a specific enough standard of conduct to be basis for negligence per se instruction); *Bauman v. Crawford*, 104 Wash. 2d 241, 247 n.1, 704 P.2d 1181, 1186 n.1 (1985) (en banc) (statutorily proscribed conduct must qualify as negligence per se before violating statute may be introduced even as mere evidence of negligence).

Rather than creating a specific standard of conduct for those who own or control the operation of boilers, § 241 sets the stage for the promulgation of safety standards under § 242, which authorizes the commissioner of labor and industry "to make rules pertaining to boilers and pressure vessels, and standards to be observed, necessary for the safety and protection of the public, employees and property." In other words, § 241 does not

define a person's duties with regard to boilers except to state the broad objective that boilers be "safe." If § 241 is read to create a binding, all-encompassing, safety standard, its plain meaning creates strict liability whenever someone is hurt or property is damaged as a result of boiler operation. Injury alone is not evidence of negligence, and § 241(b) read literally makes the occurrence of harm tantamount to a violation of its terms. In short, I do not believe the Legislature intended to penalize persons who own or control boilers without a violation of a specific safety regulation promulgated by the commissioner.

I believe the court should have instructed the jury in accordance with my view that the common law, rather than § 241(b), requires landlords to exercise reasonable care in the ownership and maintenance of rented premises. As stated in *Favreau v. Miller*, 156 Vt. 222, 228, 591 A.2d 68, 72 (1991) (plurality), "Vermont landlords too may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain 'control' of the dangerous condition." I agree with the Court in Part II C, however, that plaintiff waived this claim by not preserving it.

**Dooley, J.,** concurring in part and dissenting in part. I concur in the Court's disposition of the claim against Aetna. I cannot concur, however, in the decision to reject plaintiff's claim that the trial court should have charged the jury that violation of 21 V.S.A. § 241(b) could be considered evidence of negligence despite the absence of control of the boiler by Island. Plaintiff pled the statute and tried the case on the alternative theory that control was irrelevant. First the trial court, and now this Court, has cut the heart out of plaintiff's case despite the fact that it is firmly based on precedents from this and other states. Accordingly, I respectfully dissent.

It is helpful to an understanding of this issue to know the theories of negligence involved here. They fall into two general categories.

The first category involves the safety of the boiler itself. Plaintiff argued that the boiler was unsafe for three reasons. First and foremost, it lacked a safety interlock that prevented the grate from rising when an operator had entered through an

observation door. This reason was supported by testimony of an expert witness. Second, the automatic coal feeder could not operate without a risk that the coal would burn outside the boiler, and, as a result, coal had to be fed manually at night. As discussed below, some of the witnesses testified that night operation by a watchman was unsafe. Third, the system that operated the grate had been separated from the furnace when the furnace was modified for low pressure operation during the 1970s. The decoupling of the systems allowed the grate to operate when the boiler coal fire was low, the condition when plaintiff entered the boiler, although it would not have operated prior to the modification. This reason is significant because arguably it allowed the grate to operate and catch plaintiff's foot.

The second category involved the operation of the boiler. None of the operators, including plaintiff and plaintiff's supervisor, had training in operating the boiler. Expert witnesses for both sides found it unsafe to have a person operate it alone at night, as plaintiff was doing at the time of the accident. The expert witnesses agreed that it was unsafe for an operator to enter the boiler while the fire was going. However, plaintiff's supervisor testified that he did so and would have done exactly as plaintiff under the circumstances present at the time of the accident.

This second category requires a tie to Island if the jury is to find that it breached a duty of care. Plaintiff based his theories on the actions of Stewart Read, president and sole stockholder of Island. Mr. Read had a key to the leased premises and was present at them virtually every day. At the request of plaintiff's supervisor, he provided books on boiler operation. He failed, however, to provide the manual for the boiler which was in his possession. Although he observed the operation of the boiler, he did nothing. Nor did he do anything when he was told the boiler was a piece of junk. He negotiated a memorandum of understanding to serve as a lease and in that memorandum attempted to place the entire responsibility of the maintenance, repair, and operation of the boiler on Railroad Salvage.

It is obvious why the control question was critical to plaintiff's case. Despite his evidence that the boiler was unsafe, he could not establish liability under the court's charge unless the jury found that the boiler was controlled by Island rather than

Railroad Salvage. Similarly, his evidence about the actions of Stewart Read did not help him if the jury found that Railroad Salvage controlled the boiler. Not surprisingly, he turned to the statute, which reads:

> (b) A person shall not operate, cause to be operated, or permit to be operated any boiler or pressure vessel under his control or ownership, in a manner which causes or is likely to cause harm to other persons or property.

His theory was that Island "permit[ed] to be operated [a] . . . boiler . . . under [its] . . . ownership, in a manner which causes or is likely to cause harm to other persons or property" in violation of the statute, and this violation was evidence of negligence.

Our law is clear that "violation of a safety statute is evidence of negligence." *Gilbert v. Churchill*, 127 Vt. 457, 461, 252 A.2d 528, 530 (1969). The statute on which plaintiff relies is clearly a safety statute; it governs unsafe boilers that can cause harm to persons. This is not a case, as suggested by the majority, where plaintiff is arguing for a private right of action for violation of a statute that does not provide the remedy. Nor is it a case, as suggested by the concurring opinion, where plaintiff seeks strict liability. See Restatement (Second) of Property, Landlord & Tenant § 17.6 (1977) (statute or warranty of habitability establish the duty; liability attaches only on failure to exercise due care to discharge the duty). Plaintiff's claim is common law negligence which is breach of a duty of care. That duty may arise as here from a statute. See *Smith v. Day*, 148 Vt. 595, 597, 538 A.2d 157, 158 (1987).

The majority's answer appears to be that the statute doesn't mean what it says because it leads to an "unjust, unreasonable and absurd consequence" and because the Legislature didn't demonstrate with sufficient clarity that it intended to change the common law. The majority's characterization of the statute should be compared to that of a plurality of this Court in *Favreau v. Miller*, 156 Vt. 222, 228, 591 A.2d 68, 72 (1991), a case decided only three months ago. The opinion said:

> The trial court here properly shunned the common-law categories. As stated in a leading treatise, "it is no part of the general law of negligence to exonerate a defendant sim-

ply because the condition attributable to his negligence has passed beyond his control before it causes injury . . . ." 2 F. Harper & F. James, The Law of Torts § 27.16, at 1509 (1956). The New Hampshire Supreme Court in 1973 called the rule of landlord tort immunity an anomaly, manifesting "untoward favoritism" to landlords. *Sargent v. Ross*, 113 N.H. 388, 391, 308 A.2d 528, 530 (1973). "We think that now is the time for the landlord's limited tort immunity to be relegated to the history books where it more properly belongs." *Id.* at 396, 308 A.2d at 533. We concur, and now hold that Vermont landlords too may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain "control" of the dangerous condition. See *id.* at 397, 308 A.2d at 534.

The statement in *Favreau* apparently didn't command a majority because Justice Peck concurred in the result only and the Chief Justice and I, dissenting on other grounds, indicated that we did not have to reach the issue of the control test. Whether or not we decide to abolish the control test generally, however, the plurality was correct in saying it is largely based in history and not in modern notions of duties that underlie negligence concepts. The trend is definitely away from it. See J. Page, The Law of Premises Liability § 9.37, at 251 (2d ed. 1988). Abolition of the control test can hardly be labeled as "unjust," "unreasonable" or "absurd."

It is particularly ironic that the majority would use those labels in this case. A witness described the boiler as taller than the Windham superior courtroom was high and it would "probably occupy half of this [court]room front to back and side to side." The landlord here had a key to the leased premises and was on the site virtually every day. He often met the on-site manager at the boiler. If there is anything unjust, unreasonable or absurd here, it is that a commercial tenant would come into possession of an unsafe piece of equipment of this size and complexity and would replace it with safe equipment or that a tenant with no assistance from the landlord, without even the operation manual in the landlord's possession, would always be able to ensure safe operation. It is unjust and unreasonable that a landlord who observed the boiler day-in and day-out could

claim that he had no duty with respect to it even though he was told it was a piece of junk.

Nor can I accept the majority's second reason, that the Legislature has not spoken clearly enough to change the common law. Obviously, the Legislature can change common law doctrine if it does so in clear and unambiguous terms. See *State v. Francis*, 151 Vt. 296, 306, 561 A.2d 392, 398 (1989). The statute is clear and unambiguous; I do not know what else the Legislature could have said to express its intent. See *Altz v. Leiberson*, 233 N.Y. 16, 18, 134 N.E. 703, 704 (1922) (Cardozo, J.) (general safety statute eliminated the control test; "Apter words could hardly have been chosen . . . ."). In unmistakable terms, the statute imposes a duty on owners to require safe operation. We cannot assume that the Legislature used the words "or ownership" for no reason. See *State v. Kreth*, 150 Vt. 406, 409, 553 A.2d 554, 556 (1988).

The majority's holding here is clearly outdated. Prior to 1950, courts routinely held that safety statutes applicable to landlords did not obviate the control test. See Davis & DeLaTorre, *A Fresh Look at Premises Liability as Affected by the Warranty of Habitability*, 59 Wash. L. Rev. 141, 145 (1984). The decisions now are almost entirely to the contrary. See *id.* at 150–51. The decision of the majority is a throw-back, showing such adherence to the control test that it is willing to ignore a statute specifically modernizing the underlying duty of care in this area.

The reasoning of the concurrence is also at variance with the clear weight of authority in this area. The two leading cases in the area established duties of care based on statutes no more specific than § 241(b). See *Whetzel v. Jess Fisher Management Co.*, 282 F.2d 943, 949 (D.C. Cir. 1960) (regulation required landlord to rent premises that were in "clean, safe and sanitary condition, in repair"; applied where bedroom ceiling collapsed); *Leiberson*, 233 N.Y. at 18, 134 N.E. at 704 (statute required apartment to "be kept in good repair"; also applied where bedroom ceiling collapsed). Most of the cases that have followed have involved statutes and regulations no more specific than § 241(b). See, e.g., *Panaroni v. Johnson*, 158 Conn. 92, 101, 256 A.2d 246, 253 (1969) (statute required stairs to "be maintained and kept in sound condition and good repair"); *Ford v. Ja-Sin*,

420 A.2d 184, 186 (Del. Super. Ct. 1980) (statute requires landlord to provide "a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants and is fit for the purpose for which it is expressly rented"); *Jackson v. Wood*, 11 Kan. App. 2d 478, 481, 726 P.2d 796, 799 (1986) (statute requires owner to "maintain [heating appliances] in good and safe working order and condition"); *Morningstar v. Strich*, 326 Mich. 541, 544, 40 N.W.2d 719, 721 (1950) (statute requires owner to keep premises "in good repair"); *Horvath v. Burt*, 98 Nev. 186, 188 n.1, 643 P.2d 1229, 1231 n.1 (1982) (electrical wiring must be "maintained in good working order"); *Paprock v. Defenbaugh*, 71 Or. App. 624, 626, 693 P.2d 654, 655 (statute requires "[a]dequate heating facilities . . . maintained in good working order"), *petition for review denied*, 299 Or. 37, 698 P.2d 965 (1985); *Boe v. Healy*, 84 S.D. 155, 162 n.1, 168 N.W.2d 710, 714 n.1 (1969) (statute required boilers to be constructed and maintained so as not to "create a hazardous condition"); *Frion v. Coren*, 13 Wis. 2d 300, 303–04, 108 N.W.2d 563, 565 (1961) (statute required public buildings to be maintained in a "safe" condition). Further, none of our prior cases show concern about the specificity of safety statutes. See, e.g., *McKale v. Weeks*, 115 Vt. 155, 156, 55 A.2d 199, 200 (1947) (statute applied which requires use of "due and reasonable care" in backing an automobile). The concurring opinion misses the central point: the statute is specific on the issue here, that is, whether the landlord owed any duty with respect to the boiler. The fact that it says no more than to provide for safe operation should not be used to ignore the Legislature's assignment of responsibility.

I would reverse and remand for a new trial against Island.