### In re J.B., Juvenile

[787 A.2d 1290]

No. 01-191

September 26, 2001. Mother and father appeal from an order terminating their parental rights to their son, J.B. Father contends that the court erred in admitting testimony from an SRS worker regarding father's inability to grasp parenting concepts seven years earlier which led to the termination of his parental rights to another child. Mother contends that the court's prejudgment of the case invalidates the termination proceeding. We affirm.

The court made the following findings, which neither parent has challenged on appeal. J.B., born September 26, 1999, is the son of mother A.B. and father R.B. J.B. was born with serious physical disabilities which required that he be fed through a feeding tube and remain hospitalized for the first six weeks of his life. Hospital officials alerted SRS that they were concerned the parents would be unable to care for the child due to his special needs and the level of conflict between the parents. On October 29, 1999, SRS filed a petition alleging J.B. to be a child in need of care and supervision (CHINS). At the CHINS merits hearing, mother admitted that due to her cerebral palsy and motor impairment she was unable to physically care for the child without assistance. Because of father's inadequate parenting skills, he was unable to help her care for the child. Father has a guardian assigned to him by the probate court to assist him with his living arrangements. He has been classified as having a lower level I.Q. and lacks the basic knowledge regarding child development to care for the child. On May 12, 2000, the court found J.B. to be a CHINS based on mother's admission, the domestic violence existing in the family, and father's lack of basic knowledge of child care necessary for the safety of J.B.

On July 5, 2000, SRS filed its original disposition report, which called for termination of parental rights, with a concurrent plan of services and possible reunification between mother and J.B. Visits were initially twice a week, for two hours per visit. Mother requested that the visits be reduced to once a week. During the visits, mother was often tired, and often arrived late or left early. Mother's ability to understand and meet the child's needs did not keep pace with the child's development. Father often used the visits to discuss his own personal problems with J.B.'s foster father. The couple's pattern of domestic violence continued. On August 2000, SRS filed a disposition report requesting termination of parental rights.

At the time of the TPR hearing, father was incarcerated for failing to comply with probation conditions on a previous offense, and had a domestic assault charge for his actions against mother and an attempted sexual assault charge pending. Father was not expected to be released from custody within two years. Mother distanced herself physically and emotionally from the child. A psychological evaluation of mother found her to be suffering from depression, anxiety, and post-traumatic stress symptoms. The

evaluator recommended that mother's parental rights be terminated. The court concluded that mother's inability to parent the child went beyond her mere physical limitations. Mother refused to engage in services offered by SRS that might have assisted her in caring for J.B. Mother refused to obtain help for domestic assault, failed to grasp basic parenting skills, relocated to another state, and had serious emotional issues which required intensive therapy before she could safely parent J.B. The court concluded that mother did not have the present ability to parent J.B., nor would she have that ability within a reasonable period of time. The court concluded that father's incarceration, his lack of basic parenting skills and maturity, and his limited cognitive ability and history of violence against women made him unable to resume his parental duties in a reasonable period of time. Both mother and father appealed.

Father contends that the court erred in admitting the testimony of the SRS social worker who worked with father seven years earlier regarding his first child C.S. The social worker testified that R.B. did not benefit from prior departmental interventions and was unable to learn basic parenting skills and concepts. Eventually, father voluntarily terminated his parental rights to C.S. Although requesting an offer of proof, father did not object to this testimony during the hearing, and therefore has waived the issue on appeal. See *O'Brien v. Island Corp.*, 157 Vt. 135, 141, 596 A.2d 1295, 1298 (1991). Notwithstanding this waiver, we see no error in the court admitting testimony regarding father's inability to acquire the skills necessary to parent his older child in assessing whether father will be able to acquire these same skills within a reasonable period of time in order to resume parenting J.B. See generally *In re J.B.*, 167 Vt. 637, 640, 712 A.2d 895, 898 (1998) (mem.) (evidence of mother's past behavioral problems sup-

ported court's initial disposition decision to terminate mother's parental rights to infant removed from her care shortly after birth); *In re B.M.*, 165 Vt. 331, 337, 682 A.2d 477, 480-81 (1996) (past events are relevant indicators of whether the parent will be able to resume parental duties).

The only issue mother raises on appeal is that the court prejudged the case in making an ex parte determination that SRS's plan to seek termination, rather than reunification, was reasonable. Mother's appellate counsel discovered a "Reasonable Effort Affidavit: Permanency Review" form in the court file. The judicial determination form is required for the state to receive federal funding for foster care-maintenance payments for children placed in foster care. See 42 U.S.C. § 671(a)(15) (Supp. 2001); 45 C.F.R. § 1356.21 (2000). Absent a timely judicial determination of reasonable efforts, a child placed in foster care is ineligible for foster care-maintenance payments. 45 C.F.R. § 1356.21(b)(1)(ii), (b)(2)(ii).

The form directs SRS to identify what steps it has taken toward reunification, or if reunification were not the plan for J.B., what steps SRS had taken to finalize a permanent plan for the child. SRS averred that its plan for J.B. was not for reunification and that J.B. had been placed in a legal risk home, and that a termination of parental rights petition had been filed. The court signed the "Judicial Determination" portion of the form, in which the court determined that "[u]pon consideration of the information presented . . . the efforts SRS made were reasonable."

Mother contends that by signing the form, the trial judge evinced his prejudgment regarding a material issue in the termination of parental rights hearing, and accordingly, his failure to recuse himself from the termination of parental rights hearing a month later was erroneous. Mother also claims that

the determination should not have been made ex parte. Mother never raised these issues before the family court, and we decline to consider them on appeal. See *In re A.K.*, 153 Vt. 462, 465, 571 A.2d 75, 77-78 (1990) (failure to raise issue before the trial court results in waiver).

Mother's supplemental filing is also unavailing. Because mother has failed to preserve these issues on appeal, we decline to consider whether Nebraska's response to the federal "reasonable efforts" requirement compels a conclusion that the "judicial determination" procedure adopted by SRS fails to satisfy the federal requirement. See *Harvey v. Shalala*, 824 F. Supp. 186 (D. Neb. 1993), *aff'd*, 19 F.3d 1252 (8th Cir. 1994). Also, the extent of the Vermont Legislature's awareness of federal foster care funds when drafting the delinquency disposition review statute, 33 V.S.A. § 5529d(c), does not compel a finding that the "reasonable efforts" determination made here was inadequate or prejudiced the ultimate decision on termination of parental rights.

Although this is not the proper case to decide the issues raised by mother's appeal, given the absence of a family court rule on "reasonable efforts" determinations, we request the Advisory Committee on the Rules for Family Proceedings to consider procedural rules on the subject. The committee should consider whether and what due process requirements are mandated by the federal statute and whether the current practice for judicial determination conforms with due process. The committee should also consider the authority of judges to make the reasonable efforts determination. We note that other states have responded to the federal statute with varying approaches. Some states have incorporated the reasonable efforts requirement into their termination of parental rights statute and require courts to make a finding that reasonable efforts have been made to prevent a child's removal from the home before terminating parental rights. *In re Lilley*, 719 A.2d 327, 332 (Pa. Super. Ct. 1998). Before making a finding, the court must examine the efforts made by the social service agency to meet its reasonable efforts obligation. See *In re Rasheta D.*, No. 98-08-07-TN, 2000 WL 1693157, at *19 (Del. Fam. Ct. March 2, 2000). Others permit a waiver of a reasonable efforts determination where aggravating circumstances exist. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Some states have adopted administrative rules that require that a court make findings pursuant to 42 U.S.C. § 671(a)(15), regarding whether and under what circumstances reasonable efforts were made to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return to the home. *In re T.W.R.*, 887 P.2d 941, 944 (Alaska 1994), *overruled on other grounds by In re S.A.*, 912 P.2d 1235 (Alaska 1996). Other states have refused to make a social service agency's reasonable efforts at reunification a condition precedent to termination. *In re McDaniel*, 610 P.2d 321, 324 (Or. Ct. App. 1980).

*Affirmed.*

Motion for reargument denied November 26, 2001.