Bank of America, N.A. v. Morganbesser, et al, no. 675-10-10 Wrcv (Eaton, J., Jan. 18, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Windsor Unit | Docket No. 675-10-10 Wrcv |

Bank of America, N.A.
  Plaintiff

  v.

Kenneth Morganbesser, et al.
  Defendants

### DECISION ON MOTION FOR DEFAULT AND PROPOSED JUDGMENT ORDER

This is now a consolidated action involving the prior claim for foreclosure brought by BAC Home Loans on November 1, 2010 in this docket seeking foreclosure on a condominium unit owned by the Morganbessers. The Mountain Edge Condominium Association (MECA) was named as a defendant in the action. MECA did not assert a cross claim against Morganbesser seeking foreclosure. MECA filed for partial summary judgment in that action seeking to establish priority of its lien over that of the Plaintiff pursuant to 27A V.S.A. § 3-116. Judge DiMauro, in a brief decision, denied the motion holding that MECA had not instituted an action to enforce its lien as required under the statute.

Thereafter, MECA instituted an action in docket number 604-9-12 Wrcv on September 27, 2012 seeking foreclosure against the Morganbessers due to unpaid condominium fees. BAC Home Loans was named as a defendant. A motion to consolidate the two actions was granted and the claims have continued under this docket number. At issue at present is a motion for default by MECA against Morganbesser and the form of judgment to be issued.

MECA has established it is entitled to default against the Morganbessers. Its motion for default is **GRANTED**.

The question of the extent of lien priority by a condominium association is one upon which trial courts in Vermont have reached different conclusions. This Court is aware of four decisions, evenly divided, on whether the "superpriority" of condominium association dues encompasses only the six months reach-back prior to filing or whether the priority continues for unpaid dues accruing after the association has brought an action.

The statute in question, 27A V.S.A. § 3-116(c) states:

(c) A lien under this section is also prior to all security interests described in subdivision (b)(2) of this section to the extent of the common expense assessments based on the periodic budget adopted by the association pursuant to subsection 3-115(a) of this title

which would have become due in the absence of acceleration during the six months immediately preceding <u>institution of an action to enforce the lien</u>. Subsections (b) and (c) of this section do not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association. A lien under this section is not subject to the provisions of chapter 3 of Title 27.(emphasis added).

In its motion concerning the proposed judgment order, MECA attempts to revive its argument, previously decided by Judge DiMauro, that the filing of its answer in this docket before consolidation constituted the institution of an action to enforce its lien. MECA argues that the attorney for MECA thought he was taking "action" to enforce its lien by filing an answer to the foreclosure, adding that the filing of a cross claim or a new complaint is a waste of judicial economy and creates an additional financial burden on the property owner.

The institution of an action requires more than the mental state of counsel. The institution of an action is the commencement of an action. *Perdue v. Hess*, 484 S.E. 2d 182 (W.Va. 1992). The commencement of an action has established requirements, namely that a complaint or claim for relief has been served or filed. V.R.C.P. 3. In filing an answer, MECA did not institute anything. Even a cross claim in the view of the Court would have constituted the institution of an action as it is a claim for relief, but MECA elected not to file one. The statute does not speak to "action" by counsel, it requires the "institution of an action to enforce the lien". The commencement of an action for foreclosure by the lender, standing alone, has nothing to do with enforcement of a condominium association's lien.

The statutory requirement that an action be instituted to enforce the lien is an important one given that by doing so certain charges of the condominium association are elevated to a priority they would not otherwise enjoy. Whatever minimal additional burden is placed upon the condominium association by commencing an action, or by filing a cross claim, is vastly outweighed by the elevation in lien priority gained by so-doing. The answer to why bringing an action or a cross claim is required is straightforward: the statute, by its wording, requires it.

MECA points to the lack of any reasoning in Judge DiMauro's decision. One explanation, perhaps, may be that she felt the statute, as to the initiation of an action, was clear on its face. As was said in *Dustin v. Cowdry*, 23 Vt. 631, 636-7 (1851):

The very words of our statute, copied almost literally from the English statutes, show the sense of the legislature upon this subject; --"No person shall make any entry into any lands, or other possessions, but where entry is given by law; and in such case, not with strong hand, or with multitude of people, but only in a peaceable manner;" and if any one do either, it is provided, that he shall be fined, restitution shall be made to the one thus thrust out of possession, and he shall be entitled to recover treble damages. All this is so explicit, as scarcely to admit of question; and it seems wonderful, that any doubt should ever have arisen, especially when we advert to the occasion and the object of passing the English statute upon this subject. And, as is said by ERSKINE, J., in Newton v. Harland, 1 Man. & Gr. 644, [39 E. C. L. 581,] "It seems remarkable, that a question so likely to arise should never have been directly brought before any court in banc, until that case" (1840.) We can only conjecture, that the reason must have been, that the very great

explicitness of the statute, and the manifest absurdity of the old common law rule upon the subject, as a rule of law, in regard to the title and possession of real estate in a free country, must have so commended itself to the minds of the English people, that no man was found to possess sufficient hardihood to attempt so bold an innovation until these days of speculation and experiment.

MECA did not institute an action to enforce its lien until it filed suit on September 27, 2012. Under the reach-back provision of 27A V.S.A. § 3-116, MECA is entitled to priority over the Plaintiff for common assessments which became due 6 months prior to that date.

The other question presented by the form of judgment is whether MECA's lien on common assessments is given priority over the Plaintiff's mortgage interest for only the 6 months prior to the institution of the action by MECA or whether, once the action is instituted, the "superpriority" continues. Trial courts in Vermont are divided on this issue. This Court is aware of four decisions, two of which hold there is no on-going superpriority and two which hold there is.

The statute itself is silent as to the issue of continuing priority. In all likelihood this specific issue was not considered by the Legislature when it adopted the statute. Nothing in any of the prior trial court decisions suggest any consideration of this issue when the Uniform Common Interests Ownership Act ("the Act") was adopted.

At issue here is the balance of interests between those of the mortgage lender and those of the condominium association, which represents the common interests of the condominium community. The granting of a "superpriority" with a 6 month reach-back is a recognition of the need of the common interest community to have some protections, that is some ability to recover some common assessments, when the sale of the property at foreclosure results in insufficient proceeds to pay all lienholders. In this regard the common assessments within 6 months of institution of an action are grouped with taxes and other government assessments as moving ahead of the first lender's position.

The answer to the competing interests regarding the "superpriority" in this Court's view is found in the ability of a condominium association to continue to extend its superpriority merely by filing a new action for unpaid assessments which have come due every six months. It can not be gainsaid that by doing so a condominium association could expand its superpriority over and over while at the same time creating a morass of actions in many condominium foreclosures. Courts are to avoid constructions of statutes which lead to unjust, unreasonable, and absurd consequences. *O'Brien v. Island Corp.*, 157 Vt. 135 (1991). Requiring a condominium association to repeatedly file new actions simply to extend its priority position serves no purpose.

Lenders are aware of the limited  superpriority of condominium association liens by virtue of the Act and the Condominium Declaration. Banks lend money to condominium buyers knowing that a priority is provided by statute to certain common assessments just as with taxes. To a condominium association the common assessments serve the same purpose as taxes, i.e. providing funds for the common good. Extending the superpriority from 6 months prior to institution through to the end of the action also provides the mortgage lender with an incentive, albeit a small one, to proceed as expeditiously as permitted in their foreclosure actions.

Comment 2 to the Uniform Act provides, in part, as follows:

> A significant departure from existing practice, the six
> months' priority for the assessment lien strikes an equitable balance between the
> need to enforce collection of unpaid assessments and the obvious necessity for
> protecting the priority of the security interests of lenders. As a practical matter,
> secured lenders will most likely pay the six months' assessments demanded by the
> association rather than having the association foreclose on the unit.

The Court believes the reasoning in *Chase Home Finance, LLC v Steven Maclean, et al.,* No. 424-6-10 Rdcv (Vermont Super Ct. Jan. 31, 2012)(Teachout, J.), concerning the ability of the mortgage lender to take steps to protect its interests as discussed therein and the interpretation of the Act as guided by Uniform Law Comment 2 are persuasive. That reasoning provides further support for the outcome here. The comment suggests a starting point for the priority of the assessment lien, not a period of confinement of that priority.

MECA's Motion for Issuance of Proposed Judgment Order is **GRANTED** to the extent it provides for priority of MECA's lien from 6 months before September 27, 2012 and through to the end of the action. MECA is to prepare a new Consolidated Judgment Order consistent with this decision and reflecting the consolidation of the actions, together with any additional affidavits of sums due should they be necessary for issuance of the consolidated judgment. The new consolidated judgment order shall be submitted by February 4, 2013. Plaintiff shall have until February 15, 2013 to object to the form of the judgment for reasons not previously raised.

Dated at Windsor this 16th day of January, 2013.

_____
Harold E. Eaton, Jr.
Civil Division Judge